EDWARD A. SHEDD, Appellee, *vs.* STUART R. ALEXANDER *et al.*—(MARGARET COPELAND, Appellant.)

*Opinion filed October 27, 1915—Rehearing denied Dec. 10, 1915.*

1. LIMITATIONS—*adverse possession, though interrupted, is sufficient if continued for twenty successive years afterward.* The fact that adverse possession of land is interrupted after it is begun is not material if it is continued for twenty successive years after the interruption.

2. SAME—*change of possession may be proved by parol.* Where one person succeeds to the possession of another and it becomes necessary to connect the possession of the two to make the period required to bar the owner, the transfer of possession may be shown by parol evidence.

3. SAME—*continuous adverse possession is a question of fact.* Whether there is a continuous possession held adversely to the owner is a question of fact, to be established to the satisfaction of the jury. (*Weber* v. *Anderson,* 73 Ill. 439, followed.)

4. SAME—*a poor fence may evidence adverse possession.* A fence may be sufficient for the purpose of holding possession or as constituting visible evidence of possession, in connection with the actual occupancy of the land, even though not in good condition.

5. PRACTICE—*decree is final as to one who does not join in appeal.* Where a city is a party to a partition suit because of its interest in the streets and alleys shown on a common law plat of the land, a decree finding that the city has no interest therein is final if the city does not join in an appeal.

6. ESTOPPEL—*an estoppel to deny existence of streets and alleys does not apply to one claiming by adverse possession.* One who claims certain lots by adverse possession and not by any deed that refers to the subdivision or lots therein is not estopped to deny the existence of streets and alleys in the common law plat of the subdivision.

APPEAL from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

WORTH ALLEN, for appellant.

HARRY S. MECARTNEY, and EVERETT M. SWAIN, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Edward A. Shedd, appellee, (hereinafter called complainant,) filed his bill in chancery for partition in the superior court of Cook county, alleging that he was the owner of an undivided one-half interest in the following described property: All that portion of Wolf Lake accretion lying north of the north line (extended east) of the southeast fractional quarter of section 32, township 37, north, range 15, east of the third principal meridian, and north and east of the government meander line of the United States survey of 1834 and 1835, and south of the north line of the south half of lots 1, 2 and 3 in said section 32 of the United States survey of 1874; also that portion of the northeast fractional quarter of said section 32 lying south and west of said government meander line, including, with other property, all of the lots, blocks and premises whatsoever which fall within the description of Russell's subdivision of the northeast fractional quarter of said section 32. The bill alleged that Charles B. Shedd is the owner in fee simple absolute of the other equal undivided one-half of said real estate under a deed from complainant dated August 1, 1910. Edward A. Shedd claimed to be in the actual possession of all of said real estate for the benefit of himself and co-tenant. A large number of persons made parties defendant to the bill were defaulted. Appellant, Margaret Copeland, was made a party defendant to the bill of complaint under the allegation that she claimed some title or interest in the premises sought to be partitioned, and she filed an answer, together with certain other defendants claiming to be the owners of lots 12 and 13 and lots 42 to 48, inclusive, in block 20, in Russell's

subdivision of the northeast fractional quarter of said section 32. The controversy in the case is over the title to said lots 12 and 13 and lots 42 to 48, inclusive, and it will be necessary to consider only such portions of the record as are pertinent to the title to these lots.

The original northeast fractional quarter of section 32 according to the government survey of the years 1834 and 1835 consisted of 7.90 acres lying south and west of the meander line. Russell's subdivision included all of the quarter section lying between the south and west lines thereof and the shore of Wolf Lake, according to the following plat:

Appellant bases her title upon the following conveyances of record: The Illinois Central Railroad Company

on November 1, 1855, pursuant to the terms of an act of Congress, selected the northeast fractional quarter of said section 32. On July 10, 1869, the railroad company conveyed the said premises to James Allen. Allen thereafter had platted a subdivision of this quarter section, calling it Russell's subdivision of the northeast fractional quarter, etc., which plat is a common law plat,—not a statutory one. May 27, 1872, Allen and wife conveyed by warranty deed to Michael J. Cahill, the father and grantor of appellant, lots 12 and 13 and 42 to 48, inclusive, in block 20 of said subdivision. The deed was recorded in February, 1874. Complainant's title, as alleged in the bill of complaint, is based on the following conveyances and adverse possession: James Allen on July 2, 1883, by quit-claim deed, conveyed his interest in the said northeast fractional quarter of section 32 to William Kelsey Reed. Reed in 1888 conveyed to the Illinois Land and Loan Company, which in 1904 conveyed to Sherman C. Spitzer. The loan company and Spitzer both held as trustees for complainant.

In 1874 the United States government made a survey of that part of the north fractional half of said section 32 lying east and north of the government meander line of the survey of 1834 and 1835. The survey of 1874 divided said tract of land so surveyed into three lots or parcels, described as lots 1 and 2 of the northeast fractional quarter and lot 3 of the northwest fractional quarter of said section 32, as shown on the foregoing plat. In the case of *Fuller* v. *Shedd,* 161 Ill. 462, which involved the title to other lands in this vicinity, is a plat of section 32 and other sections, on page 465 of the opinion. On page 466 is a plat showing the lines of lots according to the government survey of 1874. In the year 1874 J. Peter Munhoven filed a homestead entry in the land office at Springfield, Illinois, and on October 30, 1882, the United States issued to Munhoven a patent to said lots 1 and 2. In October, 1890, Munhoven conveyed the south half of these two lots to

Julius Speyer, who conveyed his interest in 1898 to George M. Eckels. Eckels conveyed in May, 1899, to John M. Sheaff, who conveyed in February, 1904, to Sherman C. Spitzer. Both Sheaff and Spitzer took as trustees for the complainant. The lots in block 20 of Russell's subdivision which Allen conveyed to Cahill were not included in the United States patent to Munhoven, they being southwest of the meander line of 1834 and 1835. Munhoven in 1874 built a small house on the land south of the meander line and about two hundred feet from the south line of the quarter section and not far from Wolf Lake, and continued living there until his house burned, in 1895. He then built a shanty further north. In 1874 he also built a fence along the south line of the northeast fractional quarter of section 32 from Wolf Lake west to the center of the section, from there north along the east line of the quarter section to the meander line, and thence in a northwesterly direction to land owned by others. This fence was later rebuilt. Munhoven continued to reside on the premises of which he had taken possession, until 1899. On June 6, 1899, the solicitor for complainant arranged with Munhoven to hold possession for complainant until another tenant could be procured. Munhoven accordingly held possession until a tenant, one Rengren, went into possession.

Complainant, Shedd, claims title to the lots in question under both sections 1 and 4 of the Statute of Limitations. Appellant's answer denied that complainant had acquired title under said sections or otherwise, and denied that he was in possession of said lots. The cause was referred to a master in chancery, who found for the complainant; that the lots in question were located in that part of the northeast quarter of section 32 lying south and west of the government meander line of the survey of 1834 and 1835, and were a part of the land of which J. Peter Munhoven had exclusive possession from 1874 to June 26, 1899, and of which the complainant has had exclusive possession, by

actual residence thereon, from June 26, 1899, to the date of the finding; that Michael J. Cahill and those claiming under him paid all taxes and special assessments levied upon said lots 12 and 13 and 42 to 48, inclusive, for and during the period beginning in 1871 and running down to the present date, except the taxes for the years 1898, 1903, 1907, 1908 and 1909; that the general taxes for the five years last mentioned were paid by or on behalf of the complainant; that said lots were forfeited for the delinquent general taxes levied thereon for the years 1872 to 1879, both inclusive, and that all of the taxes for which said lots were so forfeited were subsequently extended on the tax warrant for the year 1880; that said lots were sold at tax sale on September 12, 1881, for said delinquent taxes and forfeiture, and the same were subsequently, on January 10, 1882, redeemed by said Cahill; that neither Cahill nor any of the parties claiming under him have ever had possession of said lots or any part thereof, but that complainant and Charles B. Shedd, and those by, through and under whom they claim, have been in sole and exclusive possession of the said lots continuously, by actual residence thereon by their tenants, since the year 1874, and during all of said period the complainant and Charles B. Shedd, and those under whom they claim title to said lots, have had a connected title thereto, at law or equity, deducible of record from the United States, by means of the said grant from the United States to the Illinois Central Railroad Company; the warranty deed from the Illinois Central Railroad Company to James Allen, dated July 10, 1869; the quit-claim deed from Allen and wife to William Kelsey Reed, dated July 2, 1883; the quit-claim deed from Reed and wife to the Illinois Land and Loan Company, dated June 18, 1888; and the quit-claim deed from the Illinois Land and Loan Company to complainant, dated June 6, 1910.

Objections were filed to the master's report, which were overruled and ordered to stand as exceptions to the report. The exceptions to the master's report were overruled by the chancellor, who entered a decree sustaining the findings of the master. The court found that the complainant claimed title and ownership to said premises under sections 1 and 4 of the Limitation law, and that as against any and all parties claiming adversely to the complainant and said Charles B. Shedd in or to any of said lands the said sections are, and each of them is, a complete bar; that the limitations claimed herein by the complainant are cumulative to and confirmatory of his title set out and derived by various *mesne* conveyances from the United States, and under the different claims of title therein shown, and each of them; that the complainant and Charles B. Shedd were seized in fee simple absolute of the premises in controversy, and that none of the defendants other than Charles B. Shedd had any right, title or interest thereto; that that part of Russell's subdivision shown on the plat thereof as streets and alleys has never been dedicated as public streets and alleys; that the complainant had revoked and withdrawn the offer of dedication of said streets and alleys; that the land included within the boundaries of said streets and alleys is now private property and is owned by the complainant and Charles B. Shedd; that neither the city of Chicago nor the State of Illinois has any right, title, easement or other interest to that part of the land included within the boundaries of the streets and alleys shown on the plat of Russell's subdivision.

If the evidence preserved in the record sustains the claim of complainant, Shedd, under either section 1 or section 4 of the Statute of Limitations, then the decree finding title in him to the premises in controversy must be sustained, and if the evidence fails to show that he has acquired title under either section the decree must be reversed. If the claim is to be sustained under either sec-

tion it is not necessary to discuss any title claimed under the other.

It is not disputed that J. Peter Munhoven took possession of that part of the southeast quarter of section 32 which included the lots in block 20 and fenced it in 1874, and that he built a house and occupied the land, had a garden and vineyard, cultivated small portions of it, cut hay thereon in different seasons, and remained in exclusive possession until 1899, and that Munhoven turned over this possession to the complainant, who has been in possession and occupancy of said premises, by his tenants, ever since. Neither is it disputed that the possession of Munhoven was hostile in its inception and was adverse to those who held the record title to the lots in controversy, and was open, visible and notorious. It is claimed, however, by the appellant, that the possession of Munhoven was not continuous, as required by the provisions of section 1 of the Limitation law; that during the seventies all the lots were forfeited to the State at tax sale, nobody having bought them, and the title to the lots remained in the State until January 20, 1882, at which time they were redeemed by Michael J. Cahill; that adverse possession does not run against the State, and the title to the lots being in the State after forfeiture, the possession of Munhoven during the period in which the title was in the State cannot be counted; that it is the same as if the possession were interrupted and ceased to run, or as if Munhoven had moved off and given up possession. It is also claimed that Munhoven's possession, if any, of the land southwest of the meander line cannot avail complainant because no privity is shown between them. It is further claimed that there was a break in the possession by reason of the fact that the fences enclosing the tract were allowed to fall down, and the land was not, in fact, enclosed.

As to the first point, the bill alleges that Munhoven went into possession of the portion southwest of the me-

ander line in 1884. It is very apparent that the date thus fixed is a mistake, as the proof very clearly shows that he went into possession in 1874,—the same time he made the homestead entry of the land northwest of the meander line according to the government survey of 1874,—and the bill should have been amended in that respect. But, at most, that was nothing more than a typographical error. It is unnecessary to consider the question as to whether or not the tax sale of the lots in controversy or forfeiture to the State interrupted the continuous adverse possession of Munhoven and his successor, Shedd. Whether the adverse possession commenced in 1874 or 1884 makes no difference if it was continued for any period of twenty successive years by Munhoven and the complainant and there was privity of estate between them. In this connection it must be remembered that the only title or interest acquired by Munhoven to that part of the quarter section lying south and west of the meander line was that acquired, if any, by adverse possession. He was claiming that portion of the northeast quarter of section 32 north and east of the meander line by patent from the government. He had fenced up the portion of the quarter, including the lots in controversy in block 20 of Russell's subdivision, which lay south and west of the meander line and was in possession thereof, and his possession was running. It is true that in 1890 he conveyed to Speyer whatever title he had acquired by reason of his government patent in a part of the land north and east of the meander line. We are not passing upon that title, but similar titles were disposed of by this court in the case of *Fuller* v. *Shedd, supra,* but this had nothing to do with his possession of the lots in controversy. It is proper to consider it, however, in connection with his right to dispose of his possessory interest of the lots in controversy to complainant so that the possession of complainant could be tacked on to his own possession.

In the case of *Weber* v. *Anderson,* 73 Ill. 439, it was held that under section 1 of the Limitation statute a deed is not necessary to transfer the possession of land held adversely to the owner, and where one person succeeds to the possession of another and. it becomes necessary to connect the possession of the two to make the period required to bar the owner, the transfer of possession may be shown by parol evidence. The facts in that case were somewhat similar to those in the case at bar. The party in whose favor the statute had run, a corporation, had acquired a tract of land in the city of Chicago by deed, the tract being described by metes and bounds, and was put in possession not only of the tract conveyed, but also of a strip of land ten feet wide adjoining. The corporation held possession of the land conveyed by metes and bounds, and the ten-foot strip as well, from 1849 to 1863, when it conveyed the property by the same description and transferred possession of the property conveyed and the ten-foot strip to another, who remained in possession until 1870, making more than twenty years. In that case the court said (p. 443) : "Title to real estate is one thing and possession another. The title may be owned by one and the possession held by a different person. The title may be transferred without the possession and the possession without the title. It does not necessarily follow because a deed is required to transfer the title to real estate that the same solemnity must be observed in a transfer of the possession where the title and possession are not united in the same person. The real question involved in this case is, was the land occupied continuously for a period of twenty years adversely to the owner? If it was, the owner was barred from a recovery. Whether there was a continuous possession held adversely to the owner was a question of fact, to be established to the satisfaction of the jury as any other fact would be proven." This decision was followed in the cases of *Faloon* v. *Sims-*

*hauser,* 130 Ill. 649, *Ely* v. *Brown,* 183 id. 575, and *Kepley* v. *Scully,* 185 id. 52.

The evidence in the case at bar shows that on June 6, 1899, Harry S. Mecartney, the attorney for complainant, purchased the interest of Munhoven in the land in controversy, and by agreement Munhoven remained in possession of the place and stayed in the house until a new tenant was secured, who went in before Munhoven's effects were moved out of the house on the premises, and thereafter the possession was held by successive tenants. It is true that the fences enclosing the premises in dispute were not of the best, as shown by the evidence, but while they may not have been hog tight, horse high or bull proof, we are not prepared to say that they were not sufficient for the purpose of holding possession or as visible evidence of possession in connection with the actual occupancy of the land by Munhoven and his successor, as found by the master in chancery, which finding was approved by the court.

As to the portions of the premises in controversy which are included within the streets and alleys of Russell's subdivision, the city of Chicago, which was made a party, has not seen fit to join in the appeal, and the decree of the superior court finding that the city of Chicago has no interest therein is final as to the city. While it is the law that where a person has sold lots and blocks in a subdivision shown on a plat containing streets and alleys with reference to such streets and alleys, such person and his subsequent grantees will be estopped to deny the existence of such streets and alleys, the title of the complainant has been secured by possession adverse to the owners of record of the lots in Russell's subdivision. In any event, the complainant is making no claim under any deed conveying lots in the subdivision by that description or under any deed that refers to such subdivision or lots therein, so that the authorities cited in support of appellant's contention on that point do not apply.

From a careful examination of the evidence contained in the record we are unable to say that the findings and conclusions of the master are contrary to the evidence, or that there was not sufficient evidence to justify such findings and conclusions and the decree of court based thereon. We do not deem it necessary to discuss the questions raised as to the other sources of title claimed by appellee.

For the reasons given, the decree of the superior court will be affirmed.                        *Decree affirmed.*