(Nos. 47308, 47323 cons.—)

LOUIS LEADER, Plaintiff, v. PATRICK J. CULLERTON, Assessor of Cook County, *et al.,* Defendants.— CHICAGO TITLE & TRUST COMPANY *et al.,* Plaintiffs, v. PATRICK J. CULLERTON, Assessor of Cook County, *et al.,* Defendants.—(Lowell J. Myers *et al.,* Appellees and Cross Appellants, v. Continental Illinois National Bank and Trust Company of Chicago *et al.,* Appellants and Cross Appellees.)

*Opinion filed January 26, 1976.—Supplemental opinion filed on denial of rehearing March 25, 1976.*

CREBS, J., took no part.

Sherwood K. Platt, Robert L. Stern, George V. Bobrinskoy, Jr., and Fern C. Bomchill, all of Chicago (Mayer, Brown & Platt, of counsel), for appellants Continental Illinois National Bank and Trust Company of Chicago, United Air Lines, Inc., Kelly Springfield Company, and Holiday Inns, Inc.

Francis J. McConnell and Richard P. Campbell, of McConnell & Campbell, of Chicago, for appellant Addressograph-Multigraph Corporation.

Lowell Myers, and D'Ancona, Pflaum, Wyatt & Riskind (Merrill A. Freed and Morton Denlow, of counsel), and Arvey, Hodes, Costello & Burman (Sidney R. Zatz, Herman Smith, and Jack Oppenheim, of counsel), all of Chicago, *pro se.*

MR. JUSTICE RYAN delivered the opinion of the court:

This case involves the propriety of an award of attorneys' fees in a class action in the circuit court of Cook County. Lowell J. Myers, the firm of D'Ancona, Pflaum, Wyatt and Riskind and the firm of Arvey, Hodes and Mantynband, representing various clients, brought two class actions later consolidated, challenging the constitutionality of the 1969 amendment to section 26 of the Revenue Act of 1939 (Ill. Rev. Stat. 1969, ch. 120, par. 507). The amendment substantially changed the method of assessing leasehold interests in tax exempt real estate as fully discussed in the opinion of this court in *Dee-El Garage, Inc. v. Korzen,* 53 Ill.2d 1. On June 28, 1971, decrees were entered in these cases in the circuit court of Cook County holding that section 26 as amended was unconstitutional. The decrees required that the taxes paid under this section be segregated in a special fund subject to the jurisdiction of the court for the purpose of awarding costs, expenses and reasonable attorneys' fees and for the

purpose of ordering the refund of the balance of the collected taxes.

The county appealed to this court on July 15, 1971. These cases were consolidated in this court with *Dee-El Garage, Inc. v. Korzen* and we held the amendment unconstitutional and remanded the cases to the circuit court of Cook County for the distribution of the fund which had been created by the decrees of the circuit court. 53 Ill.2d 1.

Following the entry of the decrees in the circuit court on June 28, 1971, attorney Lowell J. Myers sent copies of the decrees to every affected taxpayer in Cook County and informed the taxpayer to contact an attorney. As noted above the decrees specifically provided that the special fund into which the taxes would be paid would be used in part for the payment of reasonable attorneys' fees. Taxes in the sum of $16,762,349 were assessed under the amended section 26. However, following the entry of the decrees in the circuit court only 70 taxpayers elected to pay their taxes. These payments accumulated in the special fund which at the time of the issuance of the mandate of this court in the original appeal totaled $4,785,883.25.

Upon remand the attorneys filed a verified joint petition for attorneys' fees requesting a fee of 25% of the fund to be divided equally among them. A notice of hearing on the petition was sent to all of the 70 taxpayers who had paid into the fund. Only nine taxpayers filed objections to the petition for fees. A six-day hearing was held during which three disinterested attorneys testified as expert witnesses and stated that a fee ranging from 25% to 33% of the fund was reasonable. In arriving at this conclusion they stated that they had considered various factors including results obtained, nature and complexity of the case, amount involved, time expended, contingent nature of the employment and the expertise of the attorneys.

Following the hearing the trial judge, the same judge who had presided in all proceedings in the case in the trial

court since its inception early in 1970, on April 27, 1973, entered an order awarding attorneys' fees in the amount of 15% of the fund to be divided equally among the three firms of attorneys.

A notice of the award was sent to all members of the class who had paid into the fund and who did not enter appearances at the hearing on the petition for fees. Seven class members appealed to the appellate court, which affirmed the award. (25 Ill. App. 3d 216.) We granted leave to appeal.

The appellants first contend that the appellees are not entitled to any attorneys' fees and as authority for that position cite *Hoffman v. Lehnhausen,* 48 Ill.2d 323, *Rosemont Building Supply, Inc. v. Illinois Highway Trust Authority,* 51 Ill.2d 126, and *Doran v. Cullerton,* 51 Ill.2d 553. We do not think these cases are applicable to the issue now before us. In this case by virtue of the efforts of the appellees representing the class a fund has been accumulated. Certain benefits were derived from the creation of this fund by those who paid into it. Subsequent to the entry of the decrees in the circuit court these taxpayers had notice that the fund would be held for certain purposes including the payment of attorneys' fees and, knowing this, they voluntarily paid into the fund. They could have elected, as many did, not to pay the taxes. However, by paying into the fund the taxpayer avoided the possible penalty of 1% a month that would be imposed in the event that the tax was upheld (Ill. Rev. Stat. 1971, ch. 120, par. 705). Furthermore in long-term leases it is common to have a clause providing that the lessee must pay all taxes and in the event of default the lease may be terminated. A witness for the appellants testified that the fear of losing their leases prompted some of the taxpayers to pay into the fund. We thus think that the fund was properly created and that attorneys' fees may be properly awarded against the amount of the fund.

The appellants' second contention is that the fees are excessive and that the trial judge did not consider the

appropriate factors relating to reasonable attorneys' fees but rather assessed the fees as a flat percentage of the amount of the fund. We agree that the fees awarded are excessive.

As in *Flynn v. Kucharski,* 59 Ill.2d 61, we are again confronted with the difficult assignment of determining reasonable compensation for attorneys who through the successful prosecution of a class action have conferred substantial benefits upon the members of the class and, in fact, upon the public generally. The amount of the award of fees in such cases rests primarily in the sound discretion of the trial court. However, a court of review will not hesitate to reduce the fees awarded if it is the opinion of the court that the fees are unreasonably high. (See *Flynn v. Kucharski.*) Courts and attorneys, in calculating fees in class actions, have in the past customarily adopted the practice of considering the fee as a percentage of the amount recovered or accumulated in the fund. While giving lip service to various factors to be considered, the end result has usually been a computation based on a percentage of the fund. Such computation in many cases resulted in exorbitant fees, sparking criticism of courts and of the legal profession. See *Illinois v. Harper & Row Publishers, Inc.* (N.D. Ill. 1972), 55 F.R.D. 221; *Free World Foreign Cars, Inc. v. Alfa Romeo* (S.D.N.Y. 1972), 55 F.R.D. 26.

In *Flynn* we departed from the percentage of the recovery approach and emphasized that substantial consideration must be given in fixing fees to the amount of time expended by the attorneys. This, of course, does not mean that time expended is the sole criterion, nor will it assume the same degree of importance in every case. It should, however, be considered as the starting point or the basis upon which the fees are computed depending upon the circumstances of each case. In its simplest terms the purpose of the fee awarded is to "compensate the attorney for the reasonable value of services benefiting the unrepresented claimant." (*Lindy Bros. Builders, Inc. v. American*

*Radiator & Standard Sanitary Corp.* (3d Cir. 1973), 487 F.2d 161, 167.) As demonstrated later, in arriving at the reasonable value of the services rendered the time expended factor will be weighted by the other relevant factors in the case.

We stated in *Flynn* at page 67, "In our opinion the time expended in such a case is not to be relegated to a secondary or minor position; it is a highly significant factor in determining the fee. In this case the attorneys for the plaintiffs did not keep records of the amount of time they spent on this case. This failure to keep records greatly increases the difficulty in determining a proper fee." We realize that the long-standing practice of claiming and computing fees in class actions on a percentage basis has led many attorneys who represent clients primarily on a contingent fee basis into the habit of keeping incomplete time records in cases such as this one. In fairness, we must to a degree countenance the inadequacy of time records for services rendered in class actions prior to our decision in *Flynn*. In such cases the court must determine reasonable compensation from whatever information is available. This in some situations may of necessity involve the use of a percentage computation. We repeat, however, the admonition of *Flynn* that adequate time records must be kept in class actions and that time expended may be a highly significant factor in the computation of fees.

Various factors have been specified as warranting consideration in the computation of fees in such cases. (See *City of Detroit v. Grinnell Corp.* (2d Cir. 1974), 495 F.2d 448, 470; *Flynn v. Kucharski,* 59 Ill.2d 61, 66.) Of importance in this case are: (1) Time expended, (2) the skills and qualifications of counsel, (3) the magnitude and complexity of the undertaking, (4) the benefit conferred upon the class, and (5) the contingent nature of the fee. It must also be considered that counsel here did not have the benefit of prior governmental action in support of the class claim, and in fact no governmental authority existed to

remedy the wrong. Private litigation was the only method available for the protection of the class.

Starting with time expended, attorney Lowell Myers attached to his petition for fees copies of time sheets which reflected that he spent 276 hours between March 16, 1970, and December 11, 1972. He testified that he is not an accurate timekeeper and that he did work on the case which he failed to record on his time sheets. He said that he actually put in much more time than his records reflect.

The D'Ancona firm filed an affidavit with the petition for fees stating that the members of the firm and associates and clerks of the firm spent a total of 866 hours. The affidavit states the nature of the work performed but is not specific as to dates or the hours spent on any particular day. Also the affidavit does not contain a breakdown of the total hours from which we can ascertain how many hours were spent by the members of the firm and how many of the hours represent work done by associates and clerks.

The Arvey firm also filed a general affidavit with the petition for fees stating the nature of the work it performed and stating the total time spent by members and associates of the firm as 499 hours. Here again there was no distinction made between the time spent by members of the firm and that spent by associates. Also on cross-examination it was admitted that 51 of these hours had been spent in the prosecution of the petition for fees.

The affidavits filed and the testimony in the record shows that there was considerable duplication of effort both in research and in court appearances. The fact that three firms instead of one represent the class does not authorize a charge against the fund for the time expended by each firm when the work is duplicative or when it could have been performed by one firm in the same length of time. As an example, it appears from the incomplete records in this case that all three firms included in their

computations of time routine court appearances that could have been adequately handled by one attorney. In addition, the time sheet and affidavits reflect a charge for several hours that were not necessarily expended for the benefit of the class and therefore should not be charged against the fund.

The total hours as shown by attorneys' records should not be considered conclusive. A court in fixing the attorneys' compensation must also consider the necessity for and the quality of the time spent. Wasted time or needless duplications cannot be used to enhance the fees. The keeping of adequate time records will enable the court in fixing fees in class actions to evaluate the time the attorney claims was devoted to the benefit of the class.

In summary, the total hours claimed to have been spent on this case by D'Ancona and Arvey cannot be allowed. There was no lengthy litigation in the trial court. The original case had been decided on a motion for summary judgment, and the appeal came directly to this court. The base hours of these two firms for the purpose of computing fees in this case should approximate those spent by Myers. Thus a total of 900 base hours is appropriate to use in our computation.

We have not been favored in this case with the detailed analysis of time spent which was presented to the court in *In re Gypsum Cases* (N.D. Cal. 1974), 386 F. Supp. 959. However, having for purposes of computation established the total base hours, the approach of *Gypsum* is helpful.

In fixing the value of the hourly charge, consideration should be given to the skill and qualification of the attorneys. Myers, a sole practioner, testified that he had formerly been with the Department of Revenue and for 17 years specialized in tax cases. He testified that in the field of his specialty he charges $100 per hour. The other two firms are established firms in Chicago, and the high qualification of the attorneys representing the class has not

been questioned. While the rate of $100 per hour is a substantial amount we must consider that this case was a complex case undertaken to protect a class of taxpayers in a situation where there existed no governmental authority to correct the wrong. The hourly rate should be commensurate with the undertaking and should not be so low as to discourage participation in such cases by highly qualified counsel. We think that the basic rate of $100 per hour is appropriate in this case.

We further think that this hourly rate must be weighted by the benefit conferred upon the class and by the contingent nature of the undertaking. The testimony was that the tax assessed under the unconstitutional amendment was three to four times the tax that had previously been assessed prior to the amendment. The total amount paid into the fund was, as stated above, in excess of $4 million. Also, as noted above, those who paid into the fund received substantial benefits from its creation. Except for a minimum fee arrangement by the D'Ancona firm and by the Arvey firm with their respective individual clients the fee was entirely contingent upon the successful conclusion of the case. The weighted factor to be applied to the hourly rate will of course be dictated by the circumstances of each case. Here, considering the benefit conferred and the contingent nature of the undertaking, it is reasonable to multiply the hourly rate by the weighted factor of three. We emphasize that there is no relation between the number of law firms involved in this case (three) and the adoption of the weighted factor of three. We thus compute the fee on 900 hours at $300 per hour for a total fee of $270,000. The petition for fees prayed and the trial court held that the fee be divided equally among the three firms. We accordingly set the fee at $270,000 and direct that it be divided equally as prayed in the petition.

That part of the judgment of the appellate court that holds that the appellees are entitled to attorneys' fees from

the fund is affirmed. That part of the judgment of the appellate court that affirms the trial court's award of fees is reversed and the cause is remanded to the circuit court of Cook County with directions to award attorneys' fees in accordance with this opinion.

*Affirmed in part and reversed in part*
*and remanded, with directions.*

MR. JUSTICE CREBS took no part in the consideration or decision of this case.

### Supplemental Opinion On Denial of Rehearing

Attorney Lowell Myers in his petition for rehearing requested that this court clarify its opinion by specifying that its decision will apply only to the taxpayers who appealed from the order of the circuit court setting attorneys' fees and that the order of the circuit court is final as to the 63 taxpayers who did not appeal from that order. This request is not in accord with the holding of the opinion.

The judgment of the trial court found that reasonable attorneys' fees in this case is a sum of money equal to 15% of the accumulated fund of $4,785,883.25 and ordered that Bernard J. Korzen, county treasurer and *ex-officio* county collector of Cook County, pay this amount from the segregated fund to the attorneys "as and for a fee for legal services rendered collectively by them on behalf of members of the class who made payments into the segregated special fund ***."

This case has been prosecuted as a class action and the award of attorneys' fees was for the representation of the class to be paid from the segregated fund to which the members of the class had contributed. The award is not a judgment at law against each individual taxpayer. This is a suit in equity, and the direction of the circuit court was that the payment of the attorneys' fees be made from the segregated fund. The principle that "a decree is final as to

a party who did not appeal" (see *Shedd v. Alexander,* 270 Ill. 117; *Glos v. Woodward,* 202 Ill. 480) is not applicable to this case.

The opinion filed by this court reversed the judgment of the circuit court referred to above and set the amount of attorneys' fees at $270,000. This amount is to be paid from the segregated fund as was the original award of the circuit court, and the balance remaining in the fund is to then be distributed to the taxpayers who contributed to that fund, according to their respective interests therein.