MARTIN HECKMANN, Plaintiff, *v.* THE HOSPITAL SERVICE CORPORATION *et al.*, Defendants.—(ERNEST BRANDON *et al.*, Intervening Plaintiffs; LEONARD E. HANDMACHER *et al.*, Petitioners-Appellees, *v.* THE HOSPITAL SERVICE CORPORATION *et al.*, Respondents-Appellants.)

First District (5th Division)    No. 80-1316

Opinion filed January 22, 1982.—Modified on denial of rehearing March 5, 1982.

Karl F. Nygren, Donald J. Duffy, and G. Christian Kronberg, all of Chicago (Kirkland & Ellis, of counsel), for appellants.

Leonard E. Handmacher and Sidney Z. Karasik, both of Chicago, for appellees, *pro se*.

JUSTICE WILSON delivered the opinion of the court:

Defendants appeal from the trial court's award of attorney fees for plaintiffs and intervenors in a settled class action suit. The issue for review is that the trial court abused its discretion in awarding substantial attorney fees and incorrectly applied the factors which should be components of a fee award. The pertinent facts follow.

Plaintiff filed this action on June 12, 1974, on behalf of subscribers who purchased coverage from defendants under separate health plans providing duplicate or overlapping medical and hospital benefits. The complaint alleged that premiums were paid by plaintiff, or on his behalf, on the separate duplicative certificates and subscriptions. It was plaintiff's contention that retention of these duplicate premiums in light of defendants' "Coordination of Benefits" (COB) policy constituted unjust enrichment and violated Illinois insurance laws. The complaint further alleged that defendants "controlled, dominated or monopolized" the group insurance market in Illinois in the field of hospital and medical expense indemnity insurance in violation of the Illinois Antitrust Act (Ill. Rev. Stat. 1969, ch. 38, par. 60—1 *et seq.*).

On December 26, 1974, Ernest and Katie Brandon were granted leave to file their intervening complaint. This action alleged that the intervenors represented a subclass within the plaintiff class consisting of husbands and wives who were each covered by family benefits provisions of each other. They contended that the duplicative or overlapping coverage resulted in duplicative premiums for which refunds were requested.

During discovery, plaintiff acquired knowledge that defendants had a program for refund of premiums in at least eight categories.[1] As a result, plaintiff filed an amended and supplemental class action complaint

---

[1] Categories:
 (a) Overpayment of fees paid in error
 (b) Duplicate payment
 (c) Military Service
 (d) Deceased member
 (e) Contract adjustment
 (f) Change from family to single
 (g) Transfer to new group basis
 (h) Transfer to another Blue Cross plan

alleging pro-rata refunds of premiums were due to those subscribers whose coverage had ended as defined by the eight categories. Plaintiff stated that defendants would make refunds on request, but had not taken any affirmative steps to inform eligible subscribers of their right to a refund of these "unearned premiums."

In August 1978, while motions for summary judgment were pending, the parties reached an agreement settling the lawsuit. The stipulation of settlement provided in pertinent part:

(1) to refund the premiums paid by class members under coordination of benefits provisions unless the governing certificate contained a COB rider:

(2) to coordinate benefits in the future only after it has been explained in nontechnical language;

(3) to refund "unearned premiums" to the six subclasses of certificate and subscription holders and to set forth in all certificate and subscription forms issued after July 1, 1979, the categories, circumstances and conditions under which defendants would make refunds of unearned premiums;

(4) for the appointment of a special trustee to administer the program;

(5) for notice to the class; and

(6) payment of costs and attorney fees by defendants without deduction from the refunds to the classes.

In January 1980, counsel for plaintiff and intervenors filed their petition for attorney fees and costs. Neither counsel kept contemporaneous records of time spent on this matter, but they did reconstruct their time in schedules filed with the court. At the hearing on fees and costs, Alvin R. Becker, an attorney with extensive experience in class action litigation, testified on behalf of plaintiff and intervenors. He indicated that the fairness and reasonableness of the settlement and the benefits to the class justified an award of substantial legal fees. He stated that from his reading of the pleadings, motions for summary judgment, the size of the file and the hours expended, as well as the contingency of the recovery element, that this was a very complex case which should be considered in determining the amount of the multiplier. He believed $150 an hour was a reasonable hourly rate, and that the multiplier of definitely "3" should be applied up to the point of approval of the class action settlement by the court.

After the hearing, the court allowed counsel for plaintiff 1261 hours and intervenor's counsel 720 hours; 25 of the hours recorded by plaintiff's counsel were disallowed and 14 hours of the hours recorded by intervenors' counsel were disallowed. The court found that $150 an hour was a fair, adequate and reasonable rate and awarded $931,000 to plaintiff's

counsel and $692,700 to intervenors' counsel on the basis of the "significant and substantial benefit * * *" of revised and simplified insurance contract forms affirmatively advising insureds of eligibility for refunds for "unearned premiums * * *." This appeal follows from the award of attorney fees.

OPINION

■■ Defendants argue that the trial court abused its discretion in its award of attorney fees. We agree.

The award of attorney fees in class actions is governed by the principles set forth in *Fiorito v. Jones* (1978), 72 Ill. 2d 73, 377 N.E.2d 1019. In *Fiorito*, our supreme court enumerated factors to consider in determining the amount of attorney fees:

(1) The amount of time expended which benefitted the class, by whom, and in what manner this time was expended.

This is the starting point for the computation of fees, and the court should utilize its own knowledge, experience and expertise in determining whether the hours claimed and the tasks performed are reasonable. *Fiorito v. Jones* (1978), 72 Ill. 2d 73, 89.

(2) The hourly rate should be based on the nature of the services performed, the complexity of the case and comparable rates charged for similar services by attorneys with similar skills and qualifications. *Leader v. Cullerton* (1976), 62 Ill. 2d 483, 489, 343 N.E.2d 897.

The rate is multiplied by the hours expended and the product of this multiplication is called the "lodestar computation." *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.* (3d Cir. 1973), 487 F.2d 161, 168 (*Lindy I*).

(3) The lodestar computation is then adjusted to reflect the contingent nature of the undertaking and the benefits conferred upon the class. (*Leader.*) This computation, or a portion thereof, may be increased by applying a weighted multiplier which considers the other two factors. Noneconomic benefits accruing to the class and the public in general may also be considered. If a multiplier is applied the court should state its value and the reasons therefor. *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.* (3d Cir. 1976), 540 F.2d 102, 117-18 (*Lindy II*).

*Fiorito* further states that in most instances a weighted multiplier of three should more than adequately compensate counsel for the risk incurred and for the amounts of benefits conferred upon the class.

In the pending matter, the trial court makes reference to criteria set forth in *Fiorito*; however, we are not able to determine from this order whether the court properly reflected the principles enunciated in that case in its order.

(1) We believe that the court should indicate whether a multiplier was applied. If so, the court should state its value and the reasons therefor. *Fiorito* holds that a weighted multiplier of three is more than adequate in most instances.

Plaintiffs contend that no multiplier was involved, instead the court considered the "non-economic benefit" to the class members. Thus, if a multiplier was not applied, the court should then provide the basis for arriving at the computations in accordance with applicable law.

(2) We also believe the trial court should delineate presettlement hours from post-settlement hours and not apply the multiplier to the latter since the contingency nature of the action was removed at the time of the settlement.

(3) The trial court should also require counsel to submit more detailed reconstructed records of the time expended on this matter and by whom. *Fiorito v. Jones* (1978), 72 Ill. 2d 73, 88-89.

■■ The test of whether a fee award is excessive is whether there has been a clear abuse of discretion. Enough evidence must be submitted on the reasonableness of fees to permit the trial court to make a reasoned decision based on applicable law. (*Plote, Inc. v. Minnesota Alden Corp.* (1981), 95 Ill. App. 3d 5, 419 N.E.2d 492.) We do not believe the trial court's order contains sufficient findings to justify its award. We are thus vacating the order on attorney fees and remanding this matter for a new hearing and for such other proceedings in accordance with the dictates expressed herein.

The order of the trial court is vacated, and this matter is remanded for a *de novo* evidentiary hearing on attorney fees.

Vacated and remanded.

SULLIVAN, P. J., and MEJDA, J., concur.