JOYCE SAMPSON *et al.*, Indiv. and on Behalf of all Persons Similarly Situated, Plaintiffs-Appellees, v. EASTMAN KODAK COMPANY, Defendant-Appellant.

First District (2nd Division)   No. 1—89—0205

Opinion filed March 21, 1990.

Rudnick & Wolfe, of Chicago (William J. Campbell, Jr., and John Chen, of counsel), for appellant.

Kevin M. Forde, Ltd., of Chicago (Kevin M. Forde and Katrina Veerhusen, of counsel), for appellees.

PRESIDING JUSTICE DiVITO delivered the opinion of the court:

Plaintiffs filed a class action suit against Kodak to recover damages for the loss of use of their instant cameras as a result of an injunction issued in a separate patent lawsuit brought by Polaroid Corporation. That suit was settled, and plaintiffs' counsel petitioned the trial court for an award of attorney fees. The trial court awarded fees based on a lodestar amount and a risk multiplier of three. Kodak appeals, challenging only the amount of fees awarded.

The issues raised are (1) whether this court has jurisdiction to hear Kodak's appeal pursuant to Supreme Court Rule 303(a)(3) (107 Ill. 2d R. 303(a)(3)); (2) whether Kodak has standing to bring this appeal; (3) whether the trial court erred in applying a risk multiplier of three in determining the amount of attorney fees awarded; and (4) whether the trial court erred in applying a risk multiplier to hours between the date the settlement agreement was reached by the parties and the date it was approved by the court. We affirm.

In September 1985, an injunction was entered in a patent lawsuit brought by Polaroid Corporation prohibiting Kodak from manufacturing or selling film for over 16 million "instant" cameras it had sold. In January 1986, Kodak announced that it would implement an "Exchange Program" under which camera owners who called a toll-free number by December 31, 1986, and registered their names could exchange their cameras for either a Kodak "disc" camera and film, a $50 rebate coupon, or one share of Kodak stock.

On January 21, 1986, Joyce and William D. Sampson filed this class action suit. The complaint alleged that Kodak was liable in damages to the owners of instant cameras as a result of the patent lawsuit injunction and that the Exchange Program was unfair. Thirteen similar suits against Kodak were subsequently filed in other State and Federal courts. On February 13, 1986, this action was certified as a class action, the other actions were enjoined, and Kodak was prohibited from implementing the Exchange Program.

On August 5, 1986, an eight-count amended complaint was filed naming over 100 plaintiffs from throughout the United States and alleging breaches of express and implied warranties, fraud, and viola-

tion of Federal and State consumer laws. Seven of the eight counts were dismissed for failure to state a claim. The first count alleging breach of an implied warranty of freedom from a patent infringement survived Kodak's motion to dismiss, and plaintiffs were granted leave to file a second amended complaint. Plaintiffs' second amended complaint was filed on April 22, 1988, and, again, alleged breaches of express and implied warranties, fraud and violations of State and Federal consumer laws. Cross-motions for summary judgment were filed but never resolved due to a settlement arrived at by the parties.

Settlement negotiations began once the class was certified. On May 16, 1988, the parties filed a "Stipulation of Settlement" to pay out benefits to class members. The trial court then entered an order approving notices of the proposed settlement to the class. Notices were sent to over four million class members and published all over the country. About 200 class members formally objected to the proposed settlement. One objector, Steven Baird, appeared through counsel Torshen, Schoenfield & Spreyer, a Chicago firm, and Marc L. Goldstein and Albert E. Levy from California.

The proposed settlement required Kodak to (1) pay $108 million into a settlement fund; (2) make an additional payment of $42 million, provide rebate coupons worth $126 million, or provide a combination of cash and coupons; (3) pay $400,000 for the cost of publication of notices; (4) pay $1,180,000 for the cost of printing and mailing notices; (5) pay $15,811,000 for the cost of operating a toll-free telephone system; and (6) pay $8 million for costs of administering the settlement agreement exceeding $8 million. The settlement also provided that plaintiffs' counsel could petition the court for an award of attorney fees up to $6 million.

On September 20, 1988, the trial court held an evidentiary hearing on the fairness of the settlement, and on September 26, 1988, issued a memorandum opinion finding the settlement to be fair, adequate, and reasonable. A final order of dismissal was entered on September 30, 1988. No appeal from that order was taken.

On September 12, 1988, plaintiffs' counsel, represented by William J. Harte, Ltd., filed a joint petition for attorney fees and expenses. Plaintiff's counsel sought a fee award of either 4% of the $150 million settlement or an amount based on a lodestar of $2,289,686 and a risk multiplier of three. Kodak challenged the use of the percentage of recovery method and the lodestar amount claimed by Cohen, Shapiro, Polisher, Shiekman and Cohen. Kodak also challenged the application of a risk multiplier of three, claiming that the multiplier was excessive in light of the existence of the Exchange

Program, and that no multiplier should be applied, in any event, to post-settlement hours.

On October 6, 1988, counsel for Steven Baird filed a petition for fees and expenses based on a lodestar amount in excess of $180,000 and a multiplier of three. Kodak challenged the lodestar amount and objected to the use of a multiplier.

On October 31, 1988, the trial court held an evidentiary hearing on the fee petitions. Three expert witnesses testified for plaintiffs' counsel. Herbert B. Newberg, author of the well-known treatise on class actions, testified that in his opinion a reasonable fee would be the lodestar multiplied by 3½ to 4 and that the requested fee of $6 million "readily falls at the modest end of the reasonable range of fee awards in cases of common fund recoveries of comparable magnitude and risk." Newberg testified that the Exchange Program "should not delimit in any way petitioner's right to a substantial multiplier" because it was not a formal offer approved by Kodak's board of directors and because camera owners would receive little if any cash for Kodak stock and no cash if they received coupons or a disc camera. Newberg described the litigation as "a highly contingent *** venture for Class Counsel which remained contingent until [the trial court's] approval of the stipulation of settlement on September 26, 1988, and involved a major risk of time and money during the entirety of the litigation."

Richard W. Austin, a partner at Winston & Strawn, testified that a reasonable fee for plaintiffs' counsel would be the lodestar amount times a multiplier of 2.75 to 3.25. He also testified that the Exchange Program did not affect his opinion as to the reasonableness of the requested fee and that plaintiffs' counsel remained at risk until the settlement was approved by the court. Finally, Michel A. Coccia, a former partner at Baker & McKenzie, testified that in his opinion a reasonable fee for plaintiffs' counsel would be the lodestar amount times a multiplier of 3 to 3.25.

On December 20, 1988, the trial court read its findings into the record. The trial court awarded objector Baird's counsel $100,000 and plaintiffs' counsel $6 million dollars, the maximum amount allowable under the settlement agreement. With respect to plaintiffs' counsel's fees, the trial court found the lodestar amount to be $2,063,826.20 and applied a multiplier of three. The trial court noted that liability at the time of the lawsuit was "remote," "burden of proof was steep because of the complexity of the legal issues involved," damages were "very, very uncertain," and the quality of benefits obtained by plaintiffs' counsel was "extremely high." The trial court did not make any

specific findings with respect to the effect of the Exchange Program on the risk of recovery and did not distinguish between presettlement and post-settlement hours in applying the multiplier.

Two separate orders were entered, one on December 21, 1988, awarding plaintiffs' counsel fees, and the other on December 22, 1988, awarding fees to Baird's counsel. On January 19, 1989, Marc L. Goldstein and Albert Levy, Baird's California counsel, without having raised any objection in the trial court, appealed from both orders, challenging the trial court's application of a multiplier to post-settlement hours in the award to plaintiffs' counsel and challenging the trial court's refusal to apply a multiplier to their own award.

On February 2, 1989, Kodak joined the appeal by Goldstein and Levy, asserting jurisdiction under Supreme Court Rule 303(a)(3). On April 3, 1989, plaintiffs' counsel moved to dismiss Kodak's appeal, and this court ordered the motion to be taken with the case. Goldstein and Levy subsequently settled their fee dispute with Kodak, agreeing to return a portion of their fees to the settlement fund in exchange for Kodak's agreement not to pursue its cross-appeal against them. Goldstein and Levy then decided not to go forward with their appeal from the order awarding fees to plaintiffs' counsel.

I

Plaintiffs' counsel maintain first that this appeal must be dismissed because Kodak did not file a notice of appeal within 30 days of the December 21, 1988, or December 22, 1988, orders and cannot rely on Supreme Court Rule 303(a)(3) because this court lacked jurisdiction to hear the earlier appeal by Goldstein and Levy from the December 21, 1988, order awarding fees to class counsel. Plaintiffs' counsel argue that Goldstein and Levy lacked standing to appeal from that order because they were not parties to the class action suit; were not class members; no appeal was filed by their client, Steven Baird; and no objection was made by Baird in the trial court to class counsel's fee petition. Plaintiffs' counsel assert that the December 21, 1988, order did not affect the fees sought by Goldstein and Levy because there were sufficient funds to pay any additional fees sought without reducing the award to class counsel. We disagree.

■■ Counsel may appeal from a trial court order regarding their own fees. (*Leader v. Cullerton* (1976), 62 Ill. 2d 483, 343 N.E.2d 897.) The filing of the notice of appeal is the only jurisdictional step in the appellate process. (*Danaher v. Knightsbridge Co.* (1978), 56 Ill. App. 3d 977, 372 N.E.2d 862.) If counsel files and serves a timely notice of appeal, then under Supreme Court Rule 303(a)(3), in order to avoid

piecemeal or multiple appeals (see *Kenney v. Churchill Truck Lines, Inc.* (1972), 6 Ill. App. 3d 983, 286 N.E.2d 619), "any other party within 10 days after service upon him \*\*\* may join in the appeal \*\*\* by filing a notice of appeal." 107 Ill. 2d R. 303(a)(3).

In this case, it is undisputed that Goldstein and Levy filed a timely notice of appeal challenging their own fee award. Although the notice specifies that the appeal was taken from "the order of December 20, 1988," it is plain from the grounds raised in the notice that the appeal was from the orders actually entered on December 21, 1988, and December 22, 1988. In any event, plaintiffs' counsel here do not assert that the notice was improper because it failed to specify the correct dates on which the orders were entered. Instead, plaintiffs' counsel argue that Supreme Court Rule 303(a)(3) is not properly invoked to render Kodak's notice of appeal timely because Goldstein and Levy did not have standing to challenge the December 21, 1988, order.

Plaintiffs' counsel, however, fail to recognize that a notice of appeal is jurisdictional only and, indeed, is the only jurisdictional step in the appellate process. The appellate court is not divested of jurisdiction simply because the notice of appeal lists grounds for relief not properly raised by the named party in addition to grounds that are properly raised. Indeed, if plaintiffs' counsel's argument is accepted, then in multiparty litigation, a party must file a separate notice of appeal within 30 days of the order appealed from if it seeks relief on grounds not properly raised by the other parties. But Rule 303(a)(3) is designed to avoid such multiple appeals. The rule plainly does not limit subsequent parties to grounds for relief properly relied on by the first party in its notice of appeal. Thus, this court has jurisdiction to hear Kodak's appeal pursuant to Rule 303(a)(3) even though Kodak's grounds for appeal, based on the December 21, 1988, order, might not properly be asserted by Goldstein and Levy.

## II

Plaintiffs' counsel maintain next that Kodak has no standing to object to the fee award because it has no further interest in the settlement fund and would not benefit from a favorable decision by this court. Plaintiffs' counsel rely principally on *Boeing Co. v. Van Gemert* (1980), 444 U.S. 472, 62 L. Ed. 2d 676, 100 S. Ct. 745, where the Court rejected Boeing's appeal from an award of attorney fees to class counsel, stating that Boeing "had no cognizable interest in further litigation between the class and its lawyers over the amount of fees ultimately awarded from money belonging to the class."

Kodak argues that *Boeing* is inapposite because the Court there found that Boeing, which claimed that fees should have been charged against only the claimed portion of the fund, had no further interest in the fund only because it failed to file a timely appeal from the judgment of liability and the award of fees against the entire fund. Kodak notes that the Seventh Circuit has construed *Boeing* to mean that "in all common fund cases, the defendant has at least 'a colorable claim' to any unclaimed monies." (See *Skelton v. General Motors Corp.* (7th Cir. 1988), 860 F.2d 250, 254 n.1.) Kodak argues that it has standing here because it has a continued interest in the administration of the settlement fund, may recommend how unclaimed funds should be distributed, and has an interest in maximizing recovery to the class to protect its goodwill.

■■ ■ Generally, to have standing, a litigant must show (1) it has suffered some actual or threatened injury; (2) the injury "fairly can be traced to the challenged action"; and (3) the injury is likely to be redressed by a favorable decision. (*Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.* (1982), 454 U.S. 464, 70 L. Ed. 2d 700, 102 S. Ct. 752.) A party to the record may appeal if it considers itself "aggrieved by the judgment" regardless of whether it was actually aggrieved. (*Vece v. DeBiase* (1964), 31 Ill. 2d 542, 202 N.E.2d 482.) Nevertheless, in a class action suit, where a lump sum settlement has been negotiated and attorney fees have been awarded from the fund, the defendant ordinarily has no standing to object to the fee award because it no longer has an interest in the fund. (See *Copeland v. Marshall* (D.C. Cir. 1980), 641 F.2d 880, 905 n.57 ("In 'common fund' cases, the losing party no longer continues to have an interest in the fund; the contest becomes one between the successful plaintiffs and their attorneys over the division of the bounty"); H. Newberg, *Attorney Fee Awards* §2.27, at 92-93 (1986).) We recognize, however, that a defendant with a "colorable claim" to the unclaimed portion of the fund may have standing to challenge the fee award. In *Boeing Co. v. Van Gemert* (1980), 444 U.S. 472, 62 L. Ed. 2d 676, 100 S. Ct. 745, for example, the Court stated that Boeing had no further interest in the settlement fund because it failed to appeal from the order awarding damages to the class, but nevertheless heard the appeal on its merits, finding that Boeing had a "colorable claim" for the return of excess funds.

■■ In this case, Kodak does not have standing to appeal because it does not have even a "colorable claim" to any unclaimed portion of the settlement fund. Kodak argues that it nevertheless meets the test for standing because paring down the fee award and distributing the

extra money to the class would increase its customer goodwill and satisfaction. Although Federal courts have recognized that protection of goodwill is a sufficient interest to support standing to use (see *Southwest Suburban Board of Realtors, Inc. v. Beverly Area Planning Association* (7th Cir. 1987), 830 F.2d 1374; *Estate of Presley v. Russen* (N.J. 1981), 513 F. Supp. 1339), Kodak cites no cases, nor have we found any, where protection of goodwill was held a sufficient basis for a defendant in a common fund case to appeal from a fee award. Although Kodak now considers itself aggrieved by the fee award and believes that a successful appeal, reducing the award to about $2 million, would enhance customer goodwill and satisfaction, its position seems untenable given the terms of the settlement agreement permitting a maximum fee of $6 million. Moreover, if, as Kodak asserts, class members accused Kodak of conspiring with class counsel to permit a large fee award in exchange for a favorable settlement, or threatened to stop buying Kodak products because of the fee arrangement, the class members could have challenged the award themselves. That class members have not done so belies Kodak's contention.

Finally, if Kodak has standing to appeal in this case, there would be little to distinguish any case where the defendant settled a lawsuit brought by its customer. Under such circumstances, it would be best to heed Justice Rehnquist's remark that the defendant "has no more standing to press its appeal than would a losing defendant have standing to contest the division of an award between plaintiff and his attorney pursuant to a contingent-fee arrangement." See *Boeing Co. v. Van Gemert*, 444 U.S. at 488 n.4, 62 L. Ed. 2d at 688 n.4, 100 S. Ct. at 754 n.4 (Rehnquist, J., dissenting).

### III

Kodak maintains that the trial court failed to consider the likelihood of settlement and erred in applying a risk multiplier in awarding attorney fees. Kodak argues that the likelihood of settlement must be considered alone with the likelihood of success on the merits in determining the appropriate risk multiplier. In this case, Kodak maintains, the court considered only the novelty of plaintiffs' claims and failed to consider that the Exchange Program showed the existence of a large fund for recovery and demonstrated, even before the onset of the litigation, that Kodak would likely settle a lawsuit involving its instant cameras. Kodak also maintains that the low risk factor is demonstrated by the eagerness with which plaintiffs' counsel and counsel all over the country filed suit against Kodak.

We do not reach the merits of this issue because of our conclusion

above that Kodak does not have standing to bring this appeal. Nevertheless, we briefly discuss the relevant law and the facts of this case and note that while a risk multiplier of three is generally quite high and should be applied sparingly, we do not believe the trial court abused its discretion in applying such a multiplier in this case.

■ An award of attorney fees is a matter within the discretion of the trial court. (*Leader v. Cullerton* (1976), 62 Ill. 2d 483, 488, 343 N.E.2d 897.) The trial court may in its discretion apply a risk multiplier in calculating the award based on the benefits conferred upon the class and the contingent nature of the lawsuit. (*Fiorito v. Jones* (1978), 72 Ill. 2d 73, 91, 377 N.E.2d 1019.) A trial court's decision awarding fees will not be disturbed on appeal unless it was an abuse of discretion. *Lurie v. Canadian Javelin Ltd.* (1982), 93 Ill. 2d 231, 239, 443 N.E.2d 592.

■ In this case, considering the novelty of the claim, namely, breach of an implied warranty of freedom from patent infringement, and considering the large recovery for the class, we could not conclude that the trial court abused its discretion. Kodak's argument that the trial court failed to consider the existence of the Exchange Program is not persuasive because the trial court heard the testimony of two experts that the Exchange Program did not affect their opinion regarding the reasonableness of the fees requested. In any event, although the record is rather incomplete on this point, it appears that the Exchange Program was worth less to the class than the settlement amount because the Exchange Program did not offer camera owners any cash and the proposed offer of Kodak stock had not been approved by Kodak's board of directors or by the Securities Exchange Commission. Accordingly, it is likely that some multiplier would have been justified based on the difference in the value of the Exchange Program and the settlement amount.

## IV

Finally, Kodak maintains that the trial court erred in failing to distinguish "presettlement" from "post-settlement" hours. Kodak argues that the risk multiplier should not have been applied to hours worked after the parties filed the "Stipulation of Settlement" on May 16, 1988. Plaintiffs' counsel maintain that the risk multiplier was properly applied to hours worked up until the settlement was approved by the court on September 26, 1988.

■ Again, we do not reach the merits of this issue. We believe, however, that there is little support for Kodak's contention that the contingency was removed at the time the "Stipulation of Settlement"

was entered into by the parties. Although in determining a fee award, "the trial court should delineate pre-settlement hours from post-settlement hours and not apply the multiplier to the latter since the contingency nature of the action was removed at the time of settlement" (see *Heckmann v. Hospital Service Corp.* (1982), 104 Ill. App. 3d 728, 432 N.E.2d 891), there is no definition of when pre-settlement hours end and post-settlement hours begin, other than the Illinois Supreme Court's statement that the contingency is removed when class counsel receive their "guarantee of remuneration" (see *Fiorito v. Jones* (1978), 72 Ill. 2d 73, 92, 377 N.E.2d 1019). In this case, after the "Stipulation of Settlement" was filed, there were 200 objectors, one of whom appeared through counsel. Two experts gave unrebutted testimony that class counsel was at risk until the trial court approved the settlement agreement. On this record, we would be reluctant to conclude that the trial court abused its discretion in applying a risk multiplier to hours worked prior to the trial court's approval of the settlement.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

EGAN and GORDON, JJ., concur.