*In re* MARRIAGE OF ESTLENE JUNE JANETZKE, Plaintiff-Appellee, and JAMES JOSEPH JANETZKE, Defendant-Appellant.

First District (5th Division)    No. 80-1917

Opinion filed June 5, 1981.

Jerome Marvin Kaplan, of Chicago, for appellant.

Samuel Alfassa, Ltd., of Chicago (Michael D. Stevens, of counsel), for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal by defendant from an order denying his cross-petition for child support and from a subsequent order requiring him to pay plaintiff's attorney's fees of $4,500. He contends that the court abused its discretion in the entry of both orders and, in her brief here, plaintiff questions our jurisdiction to review the order denying child support.

In 1972, a consent decree for divorce was entered under which plaintiff was awarded custody of the parties' three minor children (Lisa, Mark, and Theresa), and defendant was ordered to pay child support of $100 per week. In 1976, an agreed order was entered granting custody of Lisa to defendant, and on May 6, 1977, an order was entered which modified the decree with respect to child support and directed the parties to pay their own attorney's fees.

On January 23, 1978, defendant filed a two-count "cross-petition" seeking in count I to obtain custody of and support for Mark and Theresa, and in count II to modify the May 6, 1977, order. On January 24, plaintiff petitioned for a rule to show cause for failure of defendant to comply with the May 6 order and for attorney's fees. Then, on February 8, 1978, defendant petitioned for a reduction of the support provided for in the May 6, 1977, order and to require plaintiff to pay child support.

Thereafter, on June 20, 1978, the court entered an agreed order temporary awarding custody of Mark and Theresa to defendant until August 14, 1978, finding defendant indebted to plaintiff in the amount of $3,135 in child-support arrearage, abating child support payments until the custody issue was resolved, and continuing all pending matters to a future date. On November 1, 1979, an agreed order was entered granting defendant custody of Mark and Theresa and continuing all remaining matters, including child support and attorney's fees.

There was a hearing in February 1980 on the issue of child support at which defendant testified that he lives with the parties' three children, his present wife, and their child; that his gross income is $30,600; that he owns his own house and automobile; that he spends $50 to $60 per month for the children's clothing; that he has monthly heating and electric bills of $99 and weekly grocery bills averaging $75 to $80; that since he is an employee of Illinois Bell, he pays no telephone bills; that he pays $200 per month on a $6,000 debt; and that he has no savings.

At this hearing, plaintiff testified that her gross income for 1978 was $15,592; that she has liquid assets of only $84; that she owes $500 for roof repairs and another $500 for dental work; that her mortgage, condominium maintenance, and electric bills are $351, $73, and $130 per month respectively; that her water, garage, and other bills total $65 per month; and that each month she pays about $470 for children's insurance, food, the dentist, car insurance, payment on the car, and automobile repairs and gasoline.

On February 20, 1980, the court denied defendant's petition for child support and continued "the respective petitions for attorney's fees" for hearing at a later date. Then, in an order entered on June 3, 1980, the court directed defendant to pay plaintiff's attorney a fee of $4,500. Notice of appeal from the February 20 and June 3, 1980 orders was filed July 1, 1980.

OPINION

We first consider the contention of plaintiff that we lack jurisdiction to review the order of February 20, 1980, because a notice of appeal filed therefrom was not timely. Supreme Court Rule 303(a) (Ill. Rev. Stat. 1979, ch. 110A, par. 303(a)) provides that a notice of appeal must be filed within 30 days after entry of the final judgment appealed from, and it is plaintiff's position that because the order in question was a final judgment as to the question of child support, the notice of appeal should have been filed within 30 days.

A judgment is final if it disposes of the rights of the parties on the entire controversy or a separate branch thereof. (*Deckard v. Joiner* (1970), 44 Ill. 2d 412, 255 N.E.2d 900, *cert. denied* (1970), 400 U.S. 941, 27

L. Ed. 2244, 91 S. Ct. 232; *In re Estate of Semeniw* (1979), 78 Ill. App. 3d 570, 397 N.E.2d 64.) In the instant case, it is clear and the parties agree that the denial of child support in the February 20, 1980, order was a final judgment in that it disposed of the rights of the parties as to that controversy; however, under Supreme Court Rule 304(a) (Ill. Rev. Stat. 1979, ch. 110A, par. 304(a)), where multiple claims are involved there may be no appeal from a final judgment disposing of fewer than all the claims involved in the action unless the trial court has made an express written finding that there was no just reason for delaying enforcement or appeal.

Here, the order in question, in addition to denying child support, also set for hearing at a future date "the respective petitions for attorney's fees" and defendant maintains that the order thus did not dispose of all of the claims involved in the action and, because it did not contain a finding there was no just reason for delaying appeal therefrom, that it was not appealable and did not become so until June 3, 1980, when the court ruled on attorney's fees.

Plaintiff relies upon *Pettit v. Pettit* (1978), 60 Ill. App. 3d 375, 376 N.E.2d 782, to support her position that the order was appealable regardless of the fact that attorney's fees had not been determined. In *Pettit*, the court stated in its decree of divorce that it was reserving jurisdiction to determine plaintiff's reasonable attorney's fees. When defendant appealed the provisions of the decree, it appears that plaintiff contended that there was no appealable final judgment because all of the claims involved had not been determined and the language required by Rule 304(a) was not included. The *Pettit* court found that the decree was final in all respects, except with regard to attorney's fees, and then went on to make the following statement:

> "If the trial court reserves jurisdiction to later rule on the question of attorney's fees, that ruling may be made in a 'supplemental decree' subsequent to entry of a final, appealable decree. *Bremer v. Bremer* (1954), 4 Ill. 2d 190, 191-92, 122 N.E.2d 794." (60 Ill. App. 3d 375, 378, 376 N.E.2d 782, 785.)

The court, however, while providing a basis for its conclusion that the judgment was final, gives no support for its statement that it was appealable. It cites only *Bremer v. Bremer*, which held that the trial court could fix attorney's fees in a proceeding subsequent to the decree of divorce, but no question as to appealability was raised, discussed, or determined.

In any event, we believe that the question of the appealability of the February 20, 1980, order here is governed by the reasoning of our supreme court in *In re Marriage of Lentz* (1980), 79 Ill. 2d 400, 403 N.E.2d 1036. In that case, the trial court entered an order granting a petition for dissolution of marriage and denying a counterpetition for legal separation

but reserving the question of maintenance and property division for future court action. The order did not contain any language to the effect that there was no just reason to delay enforcement or appeal. The appellate court found that the order, although final as to the dissolution of the marriage, was not appealable because it lacked the necessary Rule 304(a) language. In affirming, the supreme court stated:

> "The provisions of our rule [Rule 304(a)] were aimed at discouraging piecemeal appeals in the absence of some compelling reason and at removing the uncertainty as to the appealability of a judgment which was entered on less than all of the matters in controversy. [Citations.]
>
> The judgment of dissolution of marriage in our case reserved the other issues in controversy and therefore clearly disposed of fewer than all of the claims. If this is not a final judgment as indicated above, it is not appealable. If it is a final judgment and disposes of fewer than all of the claims, then it is appealable only in the manner provided by our Rule 304(a), which provides that an appeal cannot be taken from a final judgment which adjudicates fewer than all the matters in controversy, in absence of an express finding by the trial judge that there is no just reason for delaying enforcement or appeal. [Citations.] In the judgment of dissolution, the trial court reserved pending claims for future court action. The trial judge did not make an express finding that there was no just reason for delaying enforcement or appeal. We conclude that this was not a judgment from which an immediate appeal could be taken." 79 Ill. 2d 400, 407-08, 403 N.E.2d 1036, 1039.

■■ It is our view that Rule 304(a) is applicable here, as we believe that a request for attorney's fees in matrimonial cases is a claim as that term is used in the Rule. To hold otherwise would result in numerous piecemeal appeals, contrary to the intent of the Rule as stated by the court in *Lentz*. Since the order in question did not include the finding required by Rule 304(a), we find that it was not appealable and did not become so until June 3, 1980, when the court ruled on the question of attorney's fees, and thus the notice of appeal filed on July 1, 1980, was timely as to both orders.

Having determined our jurisdiction to review the order denying support, we turn to defendant's contention that the court abused its discretion in denying child support because it "only considered that the respondent-father's [defendant] income was greater than the petitioner-mother's [plaintiff] income." We disagree.

■■ The record reflects evidence not only of the parties' respective incomes but also as to their debts and expenses. Specifically, the testimony of defendant established that his gross annual income is $30,600; that he

owns his own car and home; that he owes $6,000 to his credit union on which he pays $200 monthly installments; that various monthly living expenses of his household total approximately $500; and that he has no savings. Plaintiff testified that her 1978 gross income was $15,578; that she has $84 in liquid assets; that she owes $500 for a housing repair; and that her monthly living expenses, including mortgage and automobile payments, total approximately $1,090. In view thereof, it appears that the trial court could reasonably have believed that plaintiff was not financially able to contribute to the parties' children's support. This conclusion is bolstered by a statement in defendant's brief, made in reference to a comparison between plaintiff's monthly take-home pay and her living expenses, that "both are precisely equal. Accordingly, it would appear that Petitioner [plaintiff] has no funds left which can be applied to the support of the children." Moreover, considering defendant's salary, expenses, and debts, it appears that the trial court could properly have determined that defendant was economically capable of supporting the children even though he was the head of a six-member household. In view thereof, we cannot say that the trial court abused its discretion in denying defendant's cross-petition for child support. See *Singer v. Singer* (1979), 70 Ill. App. 3d 472, 388 N.E.2d 1051.

■■ Defendant also contends the trial court erred in ordering him to pay the plaintiff's attorney's fees of $4,500. It is initially argued by defendant that plaintiff should be required to pay all or part of her attorney's fees because "[t]he modification of custody sought by the Respondent [defendant] was brought about by the Petitioner's [plaintiff] living with her paramour in an open and notorious state of adultry." This assertion, however, is not supported by the record and, although it is alleged in defendant's cross-petition, plaintiff denied it in her answer, and no fact hearing was conducted on it. As this court may take cognizance of and decide only those issues supported by the record before it on review (*In re Estate of McGaughey* (1978), 60 Ill. App. 3d 150, 376 N.E.2d 259), we will not further consider this argument.

Turning then to the contention that the fees awarded were excessive, we note that there have been numerous Illinois decisions in recent years considering the question of attorney's fees in matrimonial cases. They have established that the following factors should be considered in a fee determination: the nature of the controversy; the questions at issue; the significance or importance of the subject matter; the degree of the responsibility involved; the standing or skill of the person employed; the time and labor involved; and the relative financial positions of the parties. (*In re Marriage of Scott* (1980), 85 Ill. App. 3d 773, 407 N.E.2d 1045; *Canham v. Saisi* (1978), 65 Ill. App. 3d 686, 382 N.E.2d 654; *Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 373 N.E.2d 576; *Green v. Green*

(1976), 41 Ill. App. 3d 154, 354 N.E.2d 661; *Greenbaum v. Greenbaum* (1973), 14 Ill. App. 3d 217, 302 N.E.2d 165.) In addition, it has been held that the time charged must have been necessary for the proper handling of the matters involved. (*Gasperini v. Gasperini; Moreau v. Moreau* (1973), 9 Ill. App. 3d 1008, 293 N.E.2d 680); that the fees must be fair and just to all parties involved (*Canham v. Saisi; Green v. Green*); that the time expended and the work done must be itemized (see *In re Marriage of Raidbard* (1980), 87 Ill. App. 3d 158, 408 N.E.2d 1021; *In re Sharp* (1978), 65 Ill. App. 3d 945, 382 N.E.2d 1279); and that, as stated in *In re Marriage of Jacobson* (1980), 89 Ill. App. 3d 273, 277, 411 N.E.2d 947, 950:

> "[I]t is not sufficient to merely multiply the number of hours expended by counsel, even as shown by detailed records, by whatever hourly rate is determined to be reasonable without consideration of the other factors * * *."

(See also *Tippet v. Tippet* (1978), 65 Ill. App. 3d 1018, 383 N.E.2d 13.) Moreover, it has been frequently noted in nonmatrimonial cases that the time expended by an attorney as shown by detailed records is a factor of great importance in ascertaining a reasonable fee. (*Leader v. Cullerton* (1976), 62 Ill. 2d 483, 343 N.E.2d 897; *Flynn v. Kucharski* (1974), 59 Ill. 2d 61, 319 N.E.2d 1; *In re Estate of Weber* (1978), 59 Ill. App. 3d 274, 375 N.E.2d 569.) In *Fiorito v. Jones* (1978), 72 Ill. 2d 73, 89, 377 N.E.2d 1019, 1026, it was stated that:

> "The court is obliged, also, to carefully weigh, according to its own knowledge, experience and expertise, whether the hours claimed and the tasks performed are reasonable in relationship to the time required by other attorneys to complete similar activities. In the event the court finds the hours claimed are the result of unnecessary, duplicative work efforts or inefficiency, it must reduce the excessive hours claimed."

It also appears from the cited cases and as expressed in *Murphy v. Murphy* (1975), 31 Ill. App. 3d 321, 341, 334 N.E.2d 779, 795:

> "[T]hat the granting of attorney's fees is improper where no evidence is heard as to the items of service which were performed, or as to the basis of the amount requested or that such fees were reasonable for such services. [Citations.]"

In the instant case, there was no petition filed for attorney's fees; thus, on June 3, 1980, there was nothing before the trial court other than the oral request by plaintiff's attorneys made at that hearing for a fee of $6,400 for 2½ years of professional service based upon 80 hours of office time at $60 per hour and 20 court appearances at $80 per hour. No time records or other supporting documents were presented to the court and no testimony was taken. Furthermore, the record shows that the only contested proceeding was at the February 19, 1980, hearing on the motion for child

support, at which plaintiff and defendant were the sole witnesses, and the transcript shows that it was concluded at 12:15 p.m. on that date—indicating, at most, three hours of court time. Each of the other court appearances between May 6, 1977, and June 3, 1980, involved only the presentation of agreed orders or requests for continuances and, while there necessarily was office time expended, there is nothing in the record to support 80 hours of such time other than the unsworn statement of counsel. In this regard, we note that only two pleadings were filed by plaintiff—a two-page petition for rule to show cause and a one-page answer to defendant's petition.

■■ In the light thereof and considering the requirements placed upon the trial court by the cases cited above in determining attorney's fees, we find that the record does not support the award of attorney's fees here. Accordingly, that order will be reversed.

Summarizing, the order of February 20, 1980, denying defendant's petition for child support, is affirmed; the order of June 3, 1980, awarding a fee of $4,500 to plaintiff's attorney, is reversed and this cause is remanded for a hearing on attorney's fees consistent with the content of this opinion.

Affirmed in part.

Reversed in part and remanded.

LORENZ and WILSON, JJ., concur.