BILL MARTZAKLIS, Plaintiff and Counterdefendant-Appellee, v. 5559 BELMONT CORPORATION *et al.*, Defendants and Counterplaintiffs-Appellants.

First District (1st Division)   No. 86—0379

Opinion filed June 29, 1987.

Jeffrey M. Goldberg, of Jeffrey M. Goldberg, Ltd., of Chicago, for appellants.

Kerry R. Peck, of Peck & Wolf, of Chicago, for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Appellant Andrew Cardaras, defendant 5559 Belmont Corporation's attorney, appeals from an award of attorney fees. On appeal he argues that: (1) the trial court lacked jurisdiction to enter an order for fees on January 17, 1986; and (2) the award of fees as a sanction pursuant to Supreme Court Rules 219(c) and (d) was improper and the amount of fees was excessive. We affirm.

In February 1977 the parties to the underlying action entered into an oral agreement for the remodeling of the Spartan Restaurant, owned by defendant 5559 Belmont Corporation. Plaintiff Bill Martzaklis (Martzaklis) provided labor and materials for the remodeling work, which was completed on April 25, 1977. On July 14, 1978, Martzaklis filed a complaint against defendants to foreclose a mechanic's lien, which was later amended to add a breach of contract count. An order closing discovery was entered on December 15, 1980, effective January 26, 1981. Defendants filed a countercomplaint on September 8, 1981, for breach of contract. The trial took place on various dates in 1983 and 1984.

At trial, plaintiff attempted to introduce his group exhibit No. 14, which consisted of copies of mechanic's lien waivers by various carpenters who had done work for plaintiff in conjunction with the remodeling of the Spartan Restaurant. The defendants' objection to the entry of this exhibit as hearsay and as being unauthenticated was overruled. The court also ruled that the defendants would not be allowed to introduce testimony of a handwriting expert unless it could be shown that the individuals who had signed the lien waivers were unavailable to testify in court.

Thereafter, Andrew Cardaras, attorney for defendant 5559 Bel-

mont Corporation, employed an "investigator" to contact these potential witnesses. However, the investigator misrepresented himself as a State's Attorney investigator and made unannounced late night visits to the potential witnesses and the persons who had previously done carpentry work for Martzaklis. Several of the parties, recent Greek immigrants, were coerced into signing documents they did not understand.

Following the visits by the "investigator," defendants' counsel sent letters by certified mail to at least four witnesses. The letters were accompanied by subpoenas requiring the witnesses to produce their income tax returns. The letters stated that "[if] your testimony will be that this is *not* your signature or that you did not receive any funds from Mr. Bill Martzaklis, then you need not bring any documentation with you." The letters also stated that "you will recall that someone previously had spoken to you."

Subsequently, on March 1, 1984, the plaintiff filed a motion for sanctions pursuant to Supreme Court Rules 219(c) and (d) alleging that the defendants had violated the order closing discovery by "engaging in intimidation and deception to obtain discovery." Plaintiff also filed a petition for fees on April 6, 1984.

In an order entered May 16, 1984, the court ruled on the motion for sanctions and barred seven prospective witnesses of the defendant from testifying at trial. These witnesses were persons whose affidavits were included in plaintiff's group exhibit No. 14. The court also granted plaintiff's petition for fees but reserved ruling pending submission of evidence of the time expended by plaintiff's attorneys.

On September 4, 1984, plaintiff filed a petition for fees and schedule of services and an agreed order was entered which read in part:

> "That this court *** shall retain jurisdiction of the pending proceedings which involved the Petition for Attorney's Fees which was granted on May 16, 1984, and the future determination of those fees which has not been ruled upon ***. This court shall have jurisdiction to hear the matters referred to herein even after the Court enters Judgment in the underlying cause of action, including those matters unresolved within 30 days from the entry of Judgment."

Three days later, on September 7, 1984, an order was entered finding in favor of the defendants on both counts of the plaintiff's complaint and in favor of the defendants and against the plaintiff on the counterclaim in the amount of $4,829.14 and court costs. The trial court did not, however, make a finding in the order that there was "no just reason for delaying enforcement or appeal" of the order. On

February 27, 1985, the plaintiff filed a supplement to his petition for fees. The court entered an order on June 25, 1985, which stated that it had "retained jurisdiction to entertain the aforesaid Petition for Fees filed pursuant to the order of this court entered May 16, 1984."

On January 17, 1986, the court entered an order granting plaintiff's, attorneys Peck & Wolf, $10,347.50 in attorney fees against Andrew Cardaras, attorney for the defendants. It is from this award that Cardaras appeals.

Cardaras' first contention is that the trial court lacked jurisdiction when it entered the order for fees on January 17, 1986. He notes that despite the agreed order entered on September 4, 1984, which indicated that the court was to retain jurisdiction for some time on the fee question, the final order entered on September 7, 1984, made no reference to this agreed order. His position is that the September 7 order which disposed of both counts of the plaintiff's complaint and also defendants' countercomplaint was therefore final and the court retained no jurisdiction over the fee question. He asserts that since the September 7 judgment went unchallenged for more than 30 days, the trial court lost subject matter jurisdiction over the fee issue.

We reject this view because we believe the order was not a final judgment as to all of the claims in the action. The agreed order, entered only three days before the alleged final order was entered and signed by attorneys for both parties, expressly retained jurisdiction over the fee issue "even after the Court enters Judgment in the underlying cause of action, including those matters unresolved within 30 days from the entry of Judgment."

It appears that the parties on both sides of the controversy accepted the viability of the September 4, 1984, order. Moreover, the attorneys for both sides, as officers of the court, had an obligation to raise the issue of whether jurisdiction was reserved if they had any doubt on that question at the time the September 7, 1984, order was entered. The record does not show that either party raised the issue on September 7 and we conclude that this was because both parties recognized that the fee issue was an unresolved claim over which the court retained jurisdiction.

A judgment that does not dispose of all the claims in an action is not an appealable order without a finding under Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)). (*Hise v. Hull* (1983), 116 Ill. App. 3d 681, 683, 452 N.E.2d 372; *In re Marriage of Janetzke* (1981), 97 Ill. App. 3d 418, 422, 422 N.E.2d 914.) Supreme Court Rule 304(a) states:

"If multiple parties or multiple claims for relief are involved in

an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying enforcement or appeal. *** In the absence of such a finding, any judgment that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before the entry of a judgment adjudicating all the claims, rights, and liabilities of all the parties." 87 Ill. 2d R. 304(a).

Supreme Court Rule 219(c) (87 Ill. 2d R. 219(c)) provides in pertinent part that "the court may order that the offending party *or his attorney* pay the reasonable expenses, including attorney's fees incurred by any party as a result of *** misconduct" (involving discovery). (Emphasis added.) Peck & Wolf's petition for fees as a sanction under Rules 219(c) and (d) was submitted during the pendency of the action (see *Hise v. Hull* (1983), 116 Ill. App. 3d 681, 452 N.E.2d 372), and thus we hold it is a "claim" as that term is used in Rule 304(a).

■ This claim was not resolved on September 7, 1984; the trial court entered the September 7, 1984, order without making a Rule 304(a) finding, and that order was therefore subject to revision. Accordingly, we hold that the trial court had jurisdiction to enter the award of attorney fees on January 17, 1986.

■ ■ Cardaras also argues that the award of attorney fees as sanctions under Supreme Court Rules 219(c) and (d) was inappropriate and excessive. He contends that the subpoenas served on the carpenters were proper trial subpoenas served pursuant to Supreme Court Rule 237(a) (87 Ill. 2d R. 237(a)) for purposes of compelling the attendance of trial witnesses to establish that certain of plaintiff's affidavits were forgeries. He further contends that there was nothing improper about contacting witnesses and subpoenaing them for trial and that sanctions under Rule 219(a) are only to be used to accomplish the objectives of discovery and not to penalize an attorney for properly representing his clients at trial. Cardaras' position is that he was sufficiently sanctioned by being fined $500 and being barred from calling certain witnesses at trial.

Sanctions may be imposed under Supreme Court Rules 219(c) or (d) where noncompliance with a discovery rule or order is unreasonable and the sanction order is just. (See *Servbest Foods, Inc. v. Emessee Industries, Inc.* (1980), 82 Ill. App. 3d 662, 679, 403 N.E.2d 1, *appeal denied* (1980), 81 Ill. 2d 599.) Noncompliance is unreasonable when the conduct of the offending party is characterized by a deliber-

ate and pronounced disregard for a rule or order of the court (*In re Estate of Atwood* (1968), 97 Ill. App. 2d 311, 321, 240 N.E.2d 451; *Kocis v. Kocis* (1964), 47 Ill. App. 2d 68, 72, 197 N.E.2d 460), or when the actions of the offending party show a deliberate, contumacious or unwarranted disregard of the court's authority. (*White v. Henrotin Hospital Corp.* (1979), 78 Ill. App. 3d 1025, 398 N.E.2d 24, *appeal denied* (1979), 79 Ill. 2d 634.) Additionally, Rule 219(d) specifically provides that sanctions may be imposed where a party wilfully attempts to obtain information by an improper discovery method.

■ Contrary to Cardaras' assertions, he was not being sanctioned for serving trial subpoenas but for his deliberate efforts to coerce and intimidate witnesses. Discovery in this matter had been closed in January of 1981. Although his use of an investigator to "interview" witnesses does not fall clearly under Supreme Court Rule 201 (87 Ill. 2d R.201), which governs general discovery provisions, we find that the activities engaged in were sufficiently akin to discovery to be sanctionable under Rules 219(c) and (d).

Sworn affidavits indicated that defendants, through their agent, attempted to gather evidence following the closure of discovery while misrepresenting the agent's identity, his purpose and the source of his authority. The record shows that during the course of the trial, defense counsel employed an investigator who fraudulently misrepresented himself as a State's Attorney investigator. The investigator made unannounced late night visits to carpenters who had done work for Martzaklis during which he challenged the authenticity of their signatures on certain lien waivers. He also demanded that they sign certain documents without an explanation of their contents, although several of the parties he contacted did not read English.

When this was unsuccessful, defendants' counsel resorted to coercion and intimidation. He mailed correspondence to at least three witnesses by certified mail suggesting the manner in which they should testify. Subpoenas accompanying the letters required production of their income tax returns. The letters told that carpenters, in effect, that if their testimony was such that it would be favorable to defendant's case, they need not supply their tax returns, *i.e.*, that they would not be at risk of exposure to any potential liability for unpaid taxes.

Furthermore, although Cardaras maintained that his investigator was hired solely to serve the subpoenas, all of the subpoenas indicate that they were served by certified mail. The investigator did not appear in court nor did he file an affidavit denying his conduct and when given the opportunity to respond to the charges of coercion,

Cardaras chose not to respond.

The facts here demonstrate a deliberate disregard for the order of the court closing discovery and a wilful attempt to obtain information by improper discovery methods. Hence, we believe that the award of attorney's fees was appropriate.

■ Cardaras also contends that the time claimed by plaintiff's attorneys was excessive and that the time records are not clear as to the time spent on the motion for sanctions and therefore the fees should be reduced. He claims that the award for $10,347.50 was punitive rather than compensatory. He notes that the motions and memorandum filed by plaintiff related to the motion for sanctions totalled only about 26 pages, which did not justify the 211.25 hours billed by Peck & Wolf.

In determining the amount of fees to be awarded to plaintiff's attorneys, the trial court reviewed the pleadings, the time records of counsel and the hearing testimony and concluded that the time claimed was necessary. The court's conclusion was based not on the number of pages of pleadings produced, but on the amount of time it took to investigate and respond to Cardaras' attempt to manipulate witnesses. The trial court was in a superior position to evaluate the records and pleadings to determine if the time records were reasonable and we will not disturb the court's decision in the absence of a manifest abuse of discretion. *Aluminum Coil Anodizing Corp. v. First National Bank & Trust Co.* (1978), 64 Ill. App. 3d 256, 259, 381 N.E.2d 301.

■ We also reject Cardaras' argument that the money due and owing to defendant 5559 Corporation by Martzaklis should be set off against the award of fees owed by Cardaras to Peck & Wolf. As the trial court made clear in its order awarding fees, "the sanction was to *** compensate for the 'injury' caused by one attorney to another attorney." The amount owed by Martzaklis was intended to be exclusive of the award to Peck & Wolf and should not be used as a setoff.

We accordingly affirm the decision of the circuit court of Cook County.

Judgment affirmed.

QUINLAN, P.J., and BUCKLEY, J., concur.