2023 IL App (1st) 1220055-U

FIFTH DIVISION
February 3, 2023

No. 1-22-0055

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| *IN RE* ESTATE OF BASAVAPUNNAMMA K. RAO, Deceased. | ) ) ) | Appeal from the Circuit Court of Cook County. |
| (PADMA RAO, | ) ) | |
|    Petitioner-Appellant, | ) ) | |
| v. | ) ) | No. 2013 P 6243 |
| FMS LAW GROUP, LLC, | ) ) | Honorable James P. Murphy, |
|    Respondent-Appellee.) | ) | Judge, presiding. |

PRESIDING JUSTICE DELORT delivered the judgment of the court.
JUSTICE LYLE concurred in the judgment.
JUSTICE MITCHELL concurred in part and dissented in part.

**ORDER**

*Held*: In this decedent's estate case, we vacate the portion of the attorney fee award granted for defending against a petition for writ of *certiorari* in the United States Supreme Court, and we remand that matter with instructions. We affirm the remainder of the fee award.

¶ 1     This appeal presents another installment in the ongoing dispute between Padma Rao and her sister Anita over the administration of the estate of their mother, Basavapunnamma K. Rao.[1] The successor independent administrator of the estate, Midland Trust Company, is represented by FMS Law Group, LLC. Padma appeals the circuit court's order awarding FMS attorney fees for (1) defending a prior fee petition; (2) defending against Padma's petition for writ of *certiorari* in the United States Supreme Court; and (3) attempting to coordinate a settlement conference with Padma. We affirm in part, vacate in part, and remand with instructions.

¶ 2                                   BACKGROUND

¶ 3     The factual background and procedural posture of the underlying litigation is set forth in our disposition of Padma's prior appeal *In re Estate of Rao*, 2022 IL App (1st) 210316-U.  Here, we limit our discussion to the facts relevant to this appeal.

¶ 4     Basavapunnamma K. Rao died testate on October 13, 2013. She was survived by her two daughters: Padma and Anita. Her will was admitted to probate shortly thereafter, and Padma was appointed as administrator of the estate.

¶ 5     A few months later, Padma filed a medical malpractice lawsuit against NorthShore University Health System and four of her mother's treating physicians. After extensive settlement negotiations, Padma signed a settlement agreement, but she later changed her mind, citing her and her late mother's religious beliefs that purportedly did not allow settlement of disputes. The circuit court was unpersuaded by these eleventh-hour claims and approved the settlement. Padma moved to vacate the approval orders in her capacity as estate administrator. After the court removed Padma as estate administrator, the court allowed the new administrator, Midland, to withdraw

---

[1] In a separate order issued today, this court has also resolved another appeal in this case. *In re Estate of Rao*, 2023 IL App (1st) 1220333-U.

Padma's motion to vacate. Padma then appealed orders granting Midland's motion to withdraw her motion to vacate the settlement order, denying her motion to reconsider that order, and approving the settlement order and distribution order of the medical malpractice case. Midland moved to dismiss Padma's appeal for lack of standing, on the basis that she was no longer administrator of the estate and thus could not represent its interests. This court issued a minute order reciting that the matter came before the court on Midland's motion to dismiss, and merely stating: "IT IS HEREBY ORDERED that said motion is GRANTED". See *In re Estate of Rao*, No. 1-19-1427 (order of Feb. 20, 2020).

¶ 6 Undeterred, Padma filed a petition for rehearing in this court, a petition for leave to appeal in the Illinois Supreme Court, a petition for writ of *certiorari* in the United States Supreme Court, and a petition for rehearing regarding the denial of the petition for writ of *certiorari* (See *Rao v. Midland Trust Co.*, 141 S. Ct. 2626 (Mem.)). To be clear, Padma twice urged the Supreme Court of the United States to hear her dispute regarding this court's one-sentence minute order dismissing her appeal for lack of standing. All of Padma's efforts were unsuccessful. Nonetheless, these efforts resulted in legal expenses for Midland.

¶ 7 On September 30, 2021, FMS filed its third petition for fees. The petition covered FMS's fees and costs incurred in representing Midland from November 3, 2020 through August 2, 2021. FMS requested $80,432.50 in attorney fees for 203.8 hours of attorney time and $5157.74 in costs for a total of $85,590.24. Not all of FMS's billings for that period are contested. Padma takes issues with the following: (1) FMS's fees for defending its prior petition for fees; (2) FMS's fees for responding to Padma's petition for writ of *certiorari* in the United States Supreme Court; and (3) FMS's fees for attempting to negotiate a settlement with Padma.

¶ 8    Over Padma's objections, the circuit court approved FMS's petition, but it reduced the attorney fees from $80,432.50 to $74,045.50. This reduction only affected the fees associated with FMS's response to Padma's petition for writ of *certiorari* in the Supreme Court of the United States. According to the circuit court, FMS billed approximately $55,000 worth of attorney time for responding to Padma's petition for writ of *certiorari*, and five FMS lawyers billed for this task. The circuit court did not find the amount billed to be excessive, acknowledging that responding to such a petition is a "rather involved process." However, the court did find that the hourly rates charged by two associate attorneys were too high. Therefore, it reduced one associate's rate from $300 per hour to $250 per hour, and another associate's rate from $425 per hour to $350 per hour. These resulted in a reduction of $5100. The court also allowed a number of smaller adjustments, which resulted in an additional reduction of $1527.50. Thus, the court reduced the requested attorney fees by a grand total of $6627.50.

¶ 9    The court was unpersuaded by Padma's objection to FMS's request for fees incurred in defending a prior fee petition. The court did not read the decision Padma cited in support of her objection, *In re Estate of Halas*, 159 Ill. App. 3d 818 (1987), to prohibit the award of attorney fees that were incurred in defending a prior petition fee petition. Rather, the circuit court read the *Halas* decision narrowly as prohibiting only fees billed in defending a petition "in the trial court." Accordingly, it did not find the *Halas* ruling instructive, and denied Padma's objection to these fees. The circuit court was also unpersuaded by Padma's objection to fees related to FMS's attempts to engage in settlement discussions because it found that such attempts were reasonable and "saved the Estate financially." Therefore, the court denied Padma's objection to these fees as well. This appeal followed.

¶ 10                                          ANALYSIS

¶ 11    On appeal, Padma argues that (1) FMS, as the legal representative of the estate's representative (Midland), cannot receive fees for work incurred in defending its own fees; (2) the fees awarded for work defending against Padma's petition for writ of *certiorari* in the United States Supreme Court were excessive, and (3) FMS's attempts to negotiate a possible settlement with Anita were improper, because Padma had expressed her categorical refusal to settle.

¶ 12    We have an independent duty to consider whether we have jurisdiction and to dismiss an appeal for lack of jurisdiction. *Williams Montgomery & John Ltd. v. Broaddus*, 2017 IL App (1st) 161063, ¶ 32 (citing *Archer Daniels Midland Co. v. Barth*, 103 Ill. 2d 536 (1984)). Although the general rule is that a party can appeal a case "only after the circuit court has resolved all claims against all parties," there are exceptions to that rule. See *State Farm Fire & Casualty Co. v. John J. Rickhoff Sheet Metal Co.*, 394 Ill. App. 3d 548, 556 (2009).

¶ 13    Pursuant to Rule 304(b)(1), a judgment or order entered "in the administration of an estate *** which finally determines a right or status of a party" is appealable without a Rule 304(a) finding. Ill. S. Ct. R. 304(b)(1) (eff. Mar. 8, 2016). The committee comments to this provision explain that Rule 304(b)(1) "applies to orders that are final in character although entered in comprehensive proceedings that include other matters" and cites as an example "an order *** allowing or disallowing a claim." Ill. S. Ct. R. 304, Committee Comments (rev. Sept. 1988).

¶ 14    Here, Padma appeals the circuit court's order of December 9, 2021, which awarded FMS the fees and costs it incurred related to its representation of Midland. As this order was a final determination regarding the amount and source of the funds to satisfy the attorney fees and costs for the relevant period of representation, we have jurisdiction over this appeal.

¶ 15    Sections 27-1 and 27-2(a) of the Probate Act of 1975 (Act) provide that an estate representative and the attorney for the representative are entitled to reasonable compensation for their services. 755 ILCS 5/27-1 (West 2020) (representative); 755 ILCS 5/27-2(a) (West 2020) (attorney for representative). There is no set formula for determining a reasonable fee; each determination turns upon the particular facts and circumstances of each case. *Estate of Brown*, 58 Ill. App. 3d 697, 706 (1978). The factors a court should consider, however, are: the size of the estate, the work done and the skill with which it was performed, the time required, the advantages gained or sought by the services rendered, as well as good faith, diligence, and reasonable prudence. *Id.*; see also *In re Estate of Halas*, 159 Ill. App. 3d 818, 832 (1987) (reiterating *Brown* factors and adding "the novelty and complexity of the issues confronted"). The determination of what constitutes an estate administrator's or estate attorney's reasonable compensation is "a matter peculiarly within the discretion of the Probate Court." *Brown*, 58 Ill. App. 3d at 706. We therefore will uphold the circuit court's fee determination unless it abused its discretion, which is "the most deferential standard of review—next to no review at all." *In re D.T.*, 212 Ill. 2d 347, 356 (2004). A court abuses its discretion when its ruling is "arbitrary, fanciful, or unreasonable," or where "no reasonable person would take the view adopted by the trial court." *In re Marriage of Lindman*, 356 Ill. App. 3d 462, 467 (2005). We now turn to the questions presented.

¶ 16    Padma first contends that FMS cannot be awarded fees for its work in defending a prior fee petition. In support, Padma cites the *Halas* decision, which notes that "[t]ime spent preparing or litigating the fee petition does not benefit the estate and will not be allowed." *Halas*, 159 Ill. App. 3d at 833. Padma also cites our supreme court's decision in *Leader v. Cullerton*, 62 Ill. 2d 485 (1976), but does not provide a quotation or pinpoint citation to support her apparent argument that *Leader* prohibits fee awards in this context. In *Leader*, the court found that the number of

hours expended by class counsel was excessive, so it reduced the hours eligible for a fee award. *Id.* at 491. Though the court did note that 51 hours had been billed for the attorneys' work in prosecuting fee petitions, it did not hold that billing for time spent prosecuting is outright prohibited. *Id.* In fact, the court expressed no opinion on this 51-hour figure at all. Accordingly, we fail to see how that decision is applicable to this case.

¶ 17    We also do not read *Halas* to outright prohibit the award of attorney fees for preparing or defending a fee petition. The *Halas* decision did not explain its reasoning in holding that the award of fees for preparing or litigating a fee petition is not allowed, so we do not see a compelling reason to expand its reach beyond the specific facts of that case without first examining how other Illinois courts have handled this issue. Our research has not revealed any other Illinois decision that contemplates such a prohibition. Rather, we have found that decisions addressing the issue have reached the opposite conclusion and allowed the award of such fees.

¶ 18    In the context of the Illinois Marriage and Dissolution of Marriage Act, another statutory fee-shifting environment, this court has held that one spouse has the right to petition the court to require the other spouse to pay for both parties' attorney fees, which "would logically include drafting the petition for fees." *In re Marriage of Powers*, 252 Ill. App. 3d 506, 513 (1993). With respect to the Illinois Human Rights Act, this court has found "no abuse in the decision to award fees for preparation of the petition for attorney fees" where there is a general statutory authorization of attorney fees. *Rackow v. Illinois Human Rights Comm'n*, 152 Ill. App. 3d 1046, 1064 (1987). In *Wayne Township Board of Auditors, DuPage County v. Ludwig*, 154 Ill. App. 3d 899 (1987), the court allowed a township supervisor who successfully defended himself in a contempt proceeding brought against him by the town board to recover attorney fees for prosecuting the proceeding to recover his attorney fees after the board refused to pay the fees. *Id.*

at 909-910. The court reasoned that "[h]olding otherwise would dilute the effect of the statute by requiring successful litigants to incur additional costs to enforce their rights." *Id.* at 910.

¶ 19    These examples illustrate that in statutory fee-shifting environments, attorney fees may be awarded for defending fee petitions. Padma presents no compelling reason why the same should not be the case with respect to attorney fees awarded in decedent's estate cases. Accordingly, on this record, we cannot find that the circuit court abused its discretion in awarding fees for time spent preparing a fee petition in this probate case.

¶ 20    Padma next contends that the $55,000 in attorney fees requested by FMS for its work in responding to Padma's petition for writ of *certiorari* was excessive.

¶ 21    First, we note that the issue of standing, which forms the basis for Padma's petition for writ of *certiorari*, had already been briefed when Padma petitioned the Illinois Supreme Court for leave to appeal the one-sentence order dismissing her appeal for lack of standing. FMS filed an extensive 20-page answer to Padma's petition in the Illinois Supreme Court. Upon initial review, it appears that the content of FMS's response to Padma's petition in the Supreme Court of the United States overlaps substantially with FMS's answer to Padma's petition for leave to appeal in the Illinois Supreme Court. FMS cannot bill multiple times for performing substantially the same work. "In the event the court finds the hours claimed are the result of unnecessary, duplicative work efforts, it must reduce the excessive hours claimed." *In re Marriage of Rossi*, 113 Ill. App. 3d 55, 63 (1983) (citing *In re Marriage of Jantzke*, 97 Ill. App. 3d 418, 424 (1981)). See also *Leader*, 62 Ill. 2d at 490-91 ("Wasted time or needless duplications cannot be used to enhance the fees."). On remand, we direct the circuit court to determine the amount of duplicative work performed, and take that into consideration in reducing FMS's fee award.

¶ 22    Second, apart from the issue of duplicative work, we seriously question the prudence of responding to Padma's petition *at all*. Since the underlying order Padma challenged was nothing more than a one-sentence minute order dismissing her appeal for lack of standing on the basis that she was not the estate administrator, FMS should have known that the Supreme Court of the United States would find it did not warrant review.

¶ 23    The leading treatise on United States Supreme Court practice explains that with respect to petitions for *certiorari* that seem clearly meritless, a respondent may waive the right to file an opposition. See R. Stern, E. Gressman, S. Shapiro & K. Geller, Supreme Court Practice 6-152 (11th ed. 2019). In that case, the respondent would simply cite the opinion below and inform the Supreme Court of his or her view that the petition does not warrant review. *Id.* This approach saves time and money, and does not impose any substantial risk because even if, in the off chance, the Supreme Court decides that a petition may have some merit, it will usually request a response to be filed. *Id.* In other words, a respondent who chooses to waive filing an opposition brief will not be prejudiced in the unlikely event that the Supreme Court finds potential merit in the petition. We find this approach would have been the obvious choice for FMS, rather than incurring $55,000 in fees for no benefit whatsoever. On remand, we direct the circuit court to take this into consideration in reducing FMS's fee award.

¶ 24    In sum, we find that the fees FMS expended in responding to Padma's petition for writ of *certiorari* were excessive and that the circuit court abused its discretion in approving them at the amount stated. "Time records, although important, are not conclusive, and should be scrutinized to determine whether they represent a reasonable expenditure of time in the context of the work performed." *McHugh v. Olsen*, 189 Ill. App. 3d 508, 514, 545 (1989); *Richardson v. Haddon*, 375 Ill. App. 3d 312, 315 (2007). Though the circuit court here did reduce two attorneys' rates and

allowed several smaller deductions, it failed to adequately scrutinize the time records to determine whether they were, on the whole, *reasonable* expenditures of time, bearing in mind that much of the work had already been done in the context of the petition for leave to appeal in the Illinois Supreme Court. We therefore vacate the portion of the order awarding fees for responding to the petition for writ of *certiorari* and direct the circuit court to re-examine these fees and reduce them accordingly.

¶ 25     Padma further contends that awarding fees to FMS for its work in attempting to coordinate a settlement conference with Padma was improper because FMS knew of Padma's categorical refusal to settle. However, Padma does not cite any cases or other authority in support of the notion that fees cannot be awarded to a law firm for its time spent attempting to settle a case. This is unsurprising, given the well-settled principle that courts favor settlement. *Metropolitan. Sanitary District of Greater Chicago ex rel. O'Keeffe v. Ingram Corp.*, 85 Ill. 2d 458, 470 (1981) ("Nevertheless, it is true that courts favor settlements."). It would defy logic to deny a fee award for efforts that are strongly encouraged by the courts. Under our supreme court rules, legal arguments must be supported by "citation of the authorities and the pages of the record relied on." Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020). Padma fails to cite any legal authority in support of her contention, and therefore, her argument cannot be properly considered.

¶ 26     Additionally, Padma does not identify the amount of fees at issue for improper settlement negotiations. We are left to guess which times entries are at issue, and by how much they should be reduced. We will not engage in a guessing game. It is not our role to "search the record in order to reverse the circuit court's judgment." *Calloway v. Bovis Lend Lease, Inc.*, 2013 IL App (1st) 112746, ¶ 115. We therefore cannot find any abuse of discretion on this issue and thus affirm the portion of the fee award pertaining to settlement efforts.

¶ 27                                    CONCLUSION

¶ 28    We affirm the portions of the fee award order pertaining to defending the prior fee petition, and to the settlement efforts. We vacate the order in part and remand for reconsideration of the fees FMS incurred in responding to Padma's petition for writ of *certiorari*.

¶ 29    Affirmed in part; vacated and remanded with instructions in part.

¶ 30     JUSTICE MITCHELL, concurring in part and dissenting in part:

¶ 31    Is $55,000 in attorney fees an excessive amount to charge for filing a response to a *certiorari* petition in the United States Supreme Court? I decline to substitute my judgment on what constitutes a reasonable fee for that of the circuit court, which possesses the requisite skill, expertise, and knowledge of the case to make that determination. See *In re Estate of Halas*, 159 Ill. App. 3d 818, 832 (1987). Therefore, I respectfully dissent as to the portion of the majority's order vacating counsel's fee award.

¶ 32    Illinois law instructs the circuit court to consider the following factors before awarding attorney fees: the estate's size, the time and skill required to perform the work, the benefits conferred by the attorneys' efforts, and the attorneys' good faith and diligence in rendering services. *In re Estate of Shull*, 295 Ill. App. 3d 687, 691-694 (1998); see also Ill. R. Prof'l Conduct (2010) R. 1.5(a) (eff. Jan. 1, 2023) (listing the factors bearing on the reasonableness of attorney fees); Restatement (Third) of the Law Governing Lawyers § 34 (2000) (listing same factors). Here, the circuit court awarded $74,045.00 to Midland Trust Company's counsel, FMS Law Group, LLC, for 203.8 hours of work performed from November 2020 through August 2021. See 755 ILCS 5/27-2(a) (West 2020). In so doing, the circuit court found that the estate was "complex," that the "litigation [was] often complicated," and that responding to a *certiorari* petition was "not an ordinary task of [estate] administration performed by your garden variety representative." The

circuit court further found that counsel's efforts benefited the estate, as the settlement that counsel had defended on appeal resulted in an additional $2.1 million for the beneficiaries. The circuit court clearly weighed the above factors before awarding attorney fees over Padma Rao's objections, and we should not disturb the circuit court's findings if there is any evidence in the record to support them. *Halas*, 159 Ill. App. 3d at 831.

¶ 33    The majority's assertion that the circuit court "failed to adequately scrutinize the time records" is not borne out by the record, which reflects that the circuit court inspected the individual billing descriptions, reduced two of the associates' hourly rates, and deducted five entries prior to awarding fees. In total, the circuit court deducted $6,627.50. The majority also characterizes counsel's time responding to Rao's *certiorari* petition as mostly duplicative because it concerned the same issue as her petition for leave to appeal to the Illinois Supreme Court. But the circuit court already considered and rejected that argument, finding that the billing records indicated "a rather involved" and "time consuming" process.[2]

¶ 34    The majority further opines that Midland perhaps should have waived its right to respond to the *certiorari* petition. This, I think, crosses the line into second guessing counsel's litigation strategy and is well beyond the sort of deferential review owed to the circuit court's fee award. Significantly, if Rao had wished to argue such a point, she could have offered an opinion from an expert seeking to establish that counsel's strategy was ill-advised and unreasonable. See *Timothy Whelan Law Associates, Ltd v. Kruppe*, 409 Ill. App. 3d 359, 367 (2011). The record is devoid of

---

[2] Many of the billing entries reflect time spent responding to Rao's numerous motions in the circuit court and defending a prior fee petition on appeal. Moreover, the billing descriptions indicate that counsel, in addition to addressing the overlapping issues, drafted arguments tailored to the Supreme Court's analysis of certiorari petitions. See Robert L. Stern *et al.*, Supreme Court Practice § 6.37, at 455 (8th ed. 2002).

such evidence. Accordingly, based on this record, I cannot conclude that the circuit court acted unreasonably, and I would affirm the circuit court's order in its entirety.